IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY ROQUEMORE, Individually and as the Administratrix of the Estate of Maalik Roquemore, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CUYAHOGA METROPOLITAN HOUSING AUTHORITY, et al.,<br><br>Defendants. | CASE NO.   1:24-CV-01434<br><br>JUDGE DONALD C. NUGENT<br><br>**<u>DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>** |

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants, Cuyahoga Metropolitan Housing Authority ("CMHA"), Cuyahoga Metropolitan Housing Authority Police Department ("CMHA PD"), Andres González ("González"), Victor McDowell ("McDowell"), Desmond Ragland ("Ragland"), Thomas Burdyshaw ("Burdyshaw"), John Smiddy ("Smiddy"), and Jeffery Patterson ("Patterson") (collectively "Defendants") respectfully move this Court for partial judgment on the pleadings, dismissing the following claims of the Amended Complaint because they are not viable as a matter of law: (1) all claims alleged against CMHA PD; (2) all official capacity claims alleged against the individual Defendants; (3) Count I for violation of Section 1983 as to González, McDowell, Burdyshaw, Smiddy, and Patterson; (4) Count II for wrongful death as to CMHA, González, McDowell, Burdyshaw, Smiddy, and Patterson; (5) Count III for violation of the Americans with Disabilities Act as to all Defendants; and (6) Count IV for negligence as to all Defendants.

A Memorandum in Support of this Motion is attached hereto for the Court's review and consideration.

Respectfully submitted,

*/s/ Aretta K. Bernard*
Aretta K. Bernard (0039116)
abernard@ralaw.com
Stephanie Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
P: 330.376.2700
F: 330.376.4577

*Attorneys for Defendants*

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

This matter emanates from an encounter on September 5, 2022, between Maalik Roquemore ("Roquemore") and Officer Ragland which resulted in the use of lethal force. Plaintiff, Kimberly Roquemore's ("Plaintiff") Amended Complaint[1] alleges the following claims: excessive force and failure to train and supervise in violation of 42 U.S.C. § 1983 (Count I); wrongful death (Count II); Americans with Disabilities Act violation (Count III); and negligence (Count IV). (Doc. #14).

This Motion for Partial Judgment on the Pleadings requests that this Court dismiss: (1) all claims alleged against CMHA PD; (2) all official capacity claims alleged against the individual Defendants; (3) Count I for violation of Section 1983 as to González, McDowell, Burdyshaw, Smiddy, and Patterson; (4) Count II for wrongful death as to CMHA, González, McDowell, Burdyshaw, Smiddy, and Patterson; (5) Count III for violation of the Americans with Disabilities Act as to all Defendants; and (6) Count IV for negligence as to all Defendants.[2]

**II.    LAW AND ARGUMENT**

  **A. Standard Of Review For Judgment On The Pleadings.**

Federal Rule of Civil Procedure 12(c) provides that any party may move for judgment on the pleadings at any time after the pleadings have been closed.[3] The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is the same standard applicable to motions

---

[1] Plaintiff filed her initial Complaint on August 22, 2024. (Doc. #1).

[2] Defendants maintain that Plaintiff's Section 1983 claim against CMHA and Ragland (Count I) and wrongful death claim against Ragland (Count II) are legally and factually meritless and will be addressed on summary judgment. Defendants further reserve the right to seek summary judgment as to all of Plaintiff's claims in this matter should it be necessary.

[3] The pleadings closed in this matter on December 6, 2024. (Doc. #25).

to dismiss under Fed. R. Civ. P. 12(b)(6). *Sampson v. Cleveland*, N.D.Ohio No. 1:20-CV-741, 2020 WL 7238427, *1. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual material" which, if accepted as true, would state a valid "claim to relief that is plausible on its face." *Id.*; see also, *Askew v. True Hearts of Care*, *LLC*, N.D.Ohio No. 5:19-CV-1619, 2020 WL 71012, *2 (stating, "[w]hile detailed factual allegations are not required, Fed. R. Civ. P. 8(a)(2) calls for sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" quoting, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Although the Court must accept the well-pleaded allegations of the Amended Complaint as true, it "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Willman v. Attorney General of United States*, No. 19-2405, 972 F.3d 819, 823 (6th Cir.2020).

Moreover, the Sixth Circuit, generally does not permit group pleading. *Clark A. Robertson v. University of Akron School of Law, et al.*, N.D.Ohio No. 5:20-CV-1907, 2021 WL 3709915, *5. Indeed, this Court recently stated as follows regarding group pleading:

> Courts within the Sixth Circuit, however, do not permit "group pleading" outside of certain fraud claims. In *Mhoon v. Metro. Gov't of Nashville & Davidson, Co.*, Tenn., No. 3:16-cv-1751, 2016 WL 6250379, at *3 (M.D. Tenn. Oct. 26, 2016), the court found that excessive force and deliberate indifference allegations failed to indicate whether and how each individual defendant was involved in the use of excessive force. Like the present case, the plaintiff used generic references to "defendants," without specifying which defendants were involved, "even where it [was] clear that not all of them could have been involved." *Id.* At *3. The court concluded that this "form of group pleading [was] insufficient to establish that any one" of the defendants acted in an unconstitutional manner. *Id.* (citing *Rodriguez v. Providence Cmty. Corrs., Inc.*, 191 F. Supp. 3d 758, 773 (M.D. Tenn. 2016) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim.") (quotation marks and citations omitted)); see *Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (rejecting "group pleading" of claim

2

that individual defendants violated 18 U.S.C. § 2511 by disseminating information obtained through wire taps). (*Id.*)

Thus, if the Court determines that the claims addressed *infra* fail to allege a valid cause of action against Defendants, it should grant judgment on the pleadings to Defendants on such claims.

### B. CMHA PD Is Not *Sui Juris*.

It is well-established under Ohio law that police departments, like CMHA PD, are not *sui juris*, meaning, they are not separate legal entities that are capable of being sued. *Jackson v. Cuyahoga Cnty. Common Pleas Court*, N.D.Ohio No. 1:23 CV 2388, 2024 WL 1282700, *4 (finding that CMHA PD is not *sui juris*); see also, *Nash v. Cuyahoga Metropolitan Hous. Auth.*, N.D.Ohio No. 1:07 CV 3846, 2008 WL 495616, *2 (finding that CMHA PD is not *sui juris*); *Fuller v. Cuyahoga Metropolitan Hous. Auth.*, N.D.Ohio No. 1:05 CV 9, 2005 WL 8172101, *1 (granting CMHA PD's Motion to Dismiss and stating "the case law is <u>overwhelming and clear</u>" – "[p]olice departments are not legal entities which can sue or be sued.").

Here, Plaintiff's Amended Complaint improperly attempts to assert Counts I through IV against CMHA PD. (Doc. #14, PageID #120-25). CMHA PD is not *sui juris*. Based on the controlling case authority as set forth *supra*, all claims alleged against CMHA PD must be dismissed as a matter of law.

### C. Plaintiff's Official Capacity Claims Against The Individual Defendants Are Duplicative Of The Claims Alleged Against CMHA.

It is well-established that official capacity suits "'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Davison v. City of Lorain*, N.D.Ohio No. 1:24-CV-00227-PAB, 2024 WL 2845968, *8, quoting *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). "When a § 1983 complaint asserts a claim against a government entity and a government official in his official capacity, federal courts will dismiss the official-capacity claim." *Kouider on behalf of Y.C. v. Parma City School Dist. Bd. of Education*, 480 F.Supp.3d 772, 780

3

(N.D. Ohio 2020); see also, *Williams v. City of Columbus*, S.D.Ohio No. 2:22-CV-01831, 2024 WL 111674, *21 ("Courts within the Sixth Circuit routinely dismiss official -capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself.").

Here, Plaintiff's Amended Complaint asserts claims against the individual Defendants in both their individual and official capacities. (Doc. #14, PageID #98-100). Plaintiff has also asserted claims against CMHA. (Doc. #14, PageID #98). Based on well settled law, the official capacity claims asserted against the individual Defendants are duplicative of the claims against CMHA. As such, all claims alleged against the individual Defendants in their official capacity must be dismissed as a matter of law.

### D. Plaintiff Cannot State a Section 1983 Claim (Count I) Against Defendants González, McDowell, Burdyshaw, Smiddy, or Patterson In Their Individual Capacity.

This Court has recently reaffirmed that, "a plaintiff cannot establish the liability of any individual defendant under Section 1983 absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior." *Colbert v. Cuyahoga Cnty.*, Ohio, N.D.Ohio No. 1:23 CV 1414, 2024 WL 4289104, *4 (Judge Nugent). As such, individual liability must "'be based on the actions of the defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants.'" *Id.* (internal citation omitted). More specifically, a "complaint must allege how each individual defendant caused the plaintiff's alleged constitutional harm." *Hall v. Cuyahoga Cnty.*, N.D.Ohio No. 1:23-CV-01710-PAB, 2024 WL 3091069, *8, quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege,

4

with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.").

> Further, with regard to supervisor liability, this Court has stated as follows:
>
> Supervisory officials and employees cannot be held liable under Section 1983 solely on the basis of *respondeat superior*, or the right to control employees, or on the basis that they failed to remedy a subordinate's unconstitutional conduct. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. Ky. 1999). "[T]he defendant supervisor must be found to have "encouraged the specific incident of misconduct or in some other way directly participated in it." *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. Mich 2013)(quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. Tenn. 2008); *Shehee*, 199 F.3d 295, 300)). The Sixth Circuit has held that to be liable under Section 1983, a supervisor must at least implicitly authorize, approve, or knowingly acquiesce in the unconstitutional conduct. *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. Ky. 1982). "A mere failure to act will not suffice to establish supervisory liability. *Essex*, 518 F. App'x 351, 355 (citing *Gregory v. City of Lousiville*, 444 F.3d 725, 751 (6th Cir. Ky. 2006)).

*Colbert v. Cuyahoga Cnty.*, at *4; see also, *Kirkland v. ODRC*, N.D.Ohio No. 4:23-CV-00305, 2023 WL 8807240, *5 (dismissing Section 1983 individual capacity claims where the plaintiff failed to allege that the defendants "committed any actual acts, had any personal involvement in them, or acquiesced in the conduct of their employees.").

In *Colbert*, this Court found that the plaintiff could not establish that the individual defendants were liable in their official capacities. Similar to this matter, in *Colbert*, this Court concluded that the plaintiff only generally alleged that each individual defendant "was responsible for operating the County Jail and acted within the scope of their employment and under color of State law; that each was responsible for the County Jail's policies, procedures, practices, and customs as well as the training and supervision of agents, servants and jail employees; and, that each had policy making and/or final policy making authority for the County Jail." *Id.* However, like this matter, the plaintiff failed to set forth any factual allegations that these defendants were

5

"personally involved in or implicitly authorized any conduct that was related to the plaintiff's detention and the asserted injuries." *Colbert v. Cuyahoga Cnty.*, at *4

Similar to *Colbert*, in this case, Plaintiff only generally alleges the following relative to González, McDowell, Burdyshaw, Smiddy, and Patterson:

22. CMHA PD Chief Andrés González ("*Chief González*") was, relevant to this action, a final policy maker of the CMHA PD. Chief González was personally involved, condoned, and approved the final policy content of CMHA PD policies, practices, customs and procedures. Chief González is a "person" under 42 U.S.C. § 1983 and acted under color of law.

23. As Chief of Police, he is responsible for directing, approving, and administering police and safety staff and overseeing CMHA community safety activities. (Policy and Procedure Manual Chapter 1.1). Chief González' duties extend to operating consistently with CMHA's "Strategic Plan" of safety in effect in 2022.

24. Chief González is being sued in his individual and official capacity as an employee of CMHA PD. Chief González was personally involved in the deprivation of Maalik's federal rights by his approval of the decision to shorten and withdraw a Field Training Officer from Officer Ragland's field training.

* * *

32. Victor McDowell ("*Deputy Chief McDowell*") is the Deputy Chief of CMHA PD. McDowell is a "person" under 42 U.S.C. § 1983. Deputy Chief McDowell was at all times herein acting under "color of law."

33. Deputy Chief McDowell is a final policymaker for CMHA PD policies, customs, practices and procedures. This is reflected in the July 8, 2022, Field Commander memorandum of Officer Ragland (#57). Deputy Chief McDowell was personally involved in the creation and approval of the final policy content of CMHA PD training, policies, and procedures.

34. Deputy Chief McDowell is a final policymaker of CMHA PD policies and procedures, and he condoned and approved reduction of the Field Training Officer program. Deputy Chief McDowell was personally involved in the deprivation of Maalik's federal rights as is evidenced by a CMHA PD evaluation of Officer Ragland.

35. Thomas M. Burdyshaw ("*Police Commander Burdyshaw*") is a CMHA PD Commander. He is a "person" under 42 U.S.C. § 1983. Police Commander Burdyshaw was at all times herein acting under "color of law."

6

36. Police Commander Burdyshaw was a final policymaker personally involved in the creation and approval of the final policy content of CMHA PD training, policies, and procedures.

37. Police Commander Burdyshaw is a final policymaker of CMHA PD policies and procedures, and he condoned and approved reduction of the Field Training Officer program. Police Commander Burdyshaw was personally involved in the deprivation of Maalik's federal rights as is evidenced by the July 8, 2022, evaluation of Officer Ragland.

38. John Smiddy ("*Police FTO Smiddy*") is the CMHA PD Field Training Officer and Program Supervisor. Police Field Training Officer Smiddy is a "person" under 42 U.S.C. § 1983. Smiddy was at all times herein acting under "color of law."

39. Police FTO Smiddy was a final policymaker personally involved in the creation and approval of the final policy content of CMHA PD training, policies, and procedures.

40. Police FTO Smiddy is a final policymaker of CMHA PD policies and procedures, and he condoned and approved reduction of the FTO program. Police FTO Smiddy was personally involved in the deprivation of Maalik's federal rights as is evidenced by the July 8, 2 022, evaluation of Officer Ragland.

41. Jeffery Patterson ("*CEO Patterson*") is the Chief Executive Officer and Safety Director for CMHA. CEO Patterson is a "person" under 42 U.S.C. § 1983 and was at all times herein acting under "color of law."

42. CEO Patterson was a final policymaker personally involved in the creation and approval of the final policies, customs, practices, procedures and content of CMHA and CMHA PD matters related to CMHA's "*Strategic Plan*", CMHA safety planning and oversight of the CMHA PD training.

43. CEO Patterson condoned and/or through inaction personally and officially, constructively and/or directly ratified the deficiencies of the CMHA PD Field Training Officer program which were a cause of death of Maalik. CEO Patterson was personally involved in the deprivation of Maalik's federal rights.

* * *

81. Officer Ragland's mandatory six-month Field Training began on March 14, 2022. His Field Training ended prematurely (two months early) on July 8, 2022, due to the deliberately indifferent policies, procedures, customs and practices and ratification by Chief González, Deputy Chief McDowell, Police Commander Burdyshaw, Police Field Training Officer Smiddy, CMHA, CMHA PD and CEO Patterson who constructively and/or affirmatively condoned this institutional behavior.

7

\* \* \*

95. Those individuals from CMHA and CMHA PD who were involved in failing to train and failing in their supervise roles for CMHA PD are Chief González, Deputy Chief McDowell, Police Commander Burdyshaw, Police FTO Officer Smiddy, CEO Patterson and John Does I-X.

96. These Defendants were personally involved in the deprivation of Maalik's constitutional rights because each condoned, encouraged and/or knowingly acquiesced in the decision to fail to train and supervise Officer Ragland. Their actions constitute more than mere awareness of incomplete training and supervision of Officer Ragland. Their actions constitute a final coordinated policymaking effort as demonstrated by the Field Commander Evaluation of Officer Ragland #57 memorandum.

\* \* \*

117. Chief González, Deputy Chief McDowell, Police Commander Burdyshaw, Police FTO Officer Smiddy, CEO Patterson and John Does I-X as training policymakers, at the direction of CMHA and the CMHA PD acted deliberately indifferent when each deliberately and unreasonably intervened, promoted, ratified and acquiesced in Officer Ragland's abbreviated training process. This intervention and ratification significantly shortened Officer Ragland's Field Training and caused a significant deficiency in Officer Ragland's field understanding and knowledge when interacting with Maalik. The inadequate training, indifference and ratification was one proximate cause and nexus to Ragland's excessive use of force and Maalik's unnecessary death.

Notably, the foregoing allegations are entirely conclusory without any specific fact allegation that Defendants González, McDowell, Burdyshaw, Smiddy, or Patterson engaged in <u>unconstitutional behavior</u>. *Daniels v. CoreCivic, Inc.*, N.D.Ohio No. 1:22-CV-01373-DCN, 2024 WL 4287701, \*8, report and recommendation adopted, N.D.Ohio No. 1:22 CV 13732024 WL 4529391 ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). Indeed, Plaintiff fails entirely to allege how these Defendants were personally involved in Roquemore's alleged deprivation of rights. Moreover, Plaintiff has failed to allege that these Defendants encouraged, authorized, approved, or knowingly acquiesced in the alleged, but unsubstantiated, unconstitutional conduct by Ragland. The mere speculative allegation regarding the duration of Ragland's Field Training or Crisis Intervention

8

Training is insufficient to demonstrate active involvement in any alleged constitutional violations. At best, Plaintiff's allegations suggest that Ragland was improperly trained and/or supervised which, if factually supported, may be a basis for municipal liability, not individual supervisory liability. *Hicks v. City of Akron, Ohio*, N.D.Ohio No. 5:23-CV-1, 2024 WL 732330, *12, citing *Brumlow v. Hamilton Cnty.*, No. 1:16-cv-394, 2019 WL 613217, at *4 (E.D. Tenn. Feb. 13, 2019) (finding sheriff was not individually liable for a failure to train his subordinates and noting that "[a]bsent personal involvement in the underlying unconstitutional act, the attempt to hold municipal supervisors liable in their individual capacities for their alleged failure to adequately train employees conflates a § 1983 claim of individual supervisory liability with one of municipal liability" (citing *Harvey v. Campbell Cnty.*, 453 F. App'x 447, 463 (6th Cir. 2011))).

For these reasons, Plaintiff's alleged Section 1983 claim against Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson fails as a matter of law and must be dismissed.

> **E. Defendants CMHA, González, McDowell, Burdyshaw, Smiddy, and Patterson Are Entitled to Statutory Immunity Regarding Plaintiff's Wrongful Death Claim. (Count II).**

Under Ohio law, political subdivisions, like CMHA, are generally immune from liability under the Political Subdivision Tort Liability Act "for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. § 2744.02(A)(1). In that regard, it is well-established that the provision or nonprovision of police and emergency services qualifies as a "governmental function." R.C. § 2744.01(C)(2).

Here, Plaintiff's asserted injuries all stem from the performance of this governmental function. *Hogan v. City of Parma, Ohio*, N.D.Ohio No. 1:20 CV 1331, 2021 WL 2478982, *8 ("The provision of police services, including the training and supervision of police officers, is a governmental function"). While there are specific exceptions to this broad grant of immunity, *see*

9

R.C. § 2744.02(B), Plaintiff cannot argue that any of these exceptions apply here.[4] Accordingly, CMHA is entitled to statutory immunity from Plaintiff's state law claim for wrongful death. *Hicks v. Scott*, S.D.Ohio No. 1:16CV621, 2023 WL 3171675, *7, aff'd, 6th Cir. No. 23-33832024 WL 4360652 (finding the City was entitled to statutory immunity from the plaintiff's state law claim for wrongful death).

Further, R.C. § 2744.03(A)(6) provides immunity to employees of political subdivisions unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

Here, Plaintiff attempts to overcome immunity by simply concluding that Defendants acted with "malicious purpose, in bad faith, and/or in a wanton or reckless manner." (Doc. #14, PageID #125, at ¶ 135)[5]. Plaintiff, however, has failed to set forth any facts in her Amended Complaint to support such allegations against González, McDowell, Burdyshaw, Smiddy, or Patterson. Indeed, neither González, McDowell, Burdyshaw, Smiddy, nor Patterson were directly involved in the

---

[4] R.C. § 2744.02(B) revokes immunity for damages caused by: (1) a municipal employee's negligent operation of a motor vehicle, (2) the negligent performance of employees with respect to proprietary functions of a political subdivision, (3) a municipality's negligent failure to keep public roads in repair, (4) a physical defect on the grounds of public buildings used for government functions, or when (5) civil liability is expressly imposed by another provision of the Ohio Revised Code. R.C. § 2744.02(B)(1)–(5). Here, Plaintiff does not allege facts that would suggest any of the applicable, enumerated exceptions apply.

[5] Notably, Plaintiff explicitly sets forth this allegation as to Count IV. It is only by incorporation that this allegation applies to Count II. In that regard, Plaintiff fails to satisfy the basic pleading standards set forth in *Twombly/Iqbal* and, as such, for this additional reason Count II must be dismissed as a matter of law. *Day v. DeLong*, S.D.Ohio No. 3:16-CV-00437, 2017 WL 6886099, *9, objections overruled, S.D.Ohio No. 3:16-CV-4372018 WL 348057 (finding that the mere assertion that the defendant acted with malice was insufficient to state a claim for relief where the plaintiff failed to point to any conduct on the part of the defendant to support malice).

encounter between Roquemore and Defendant Ragland. Plaintiff's reliance on group pleading, which is prohibited in the Sixth Circuit as set forth *supra*, is fatal to Plaintiff's claim. For these reasons, Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson are entitled to statutory immunity and Count II alleged against them should be dismissed as a matter of law.

### F. Plaintiff's Americans with Disabilities Act Claim Fails As A Matter Of Law. (Count III).

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Significantly, neither the United States Supreme Court nor the Sixth Circuit has found that Title II of the ADA applies to arrests. *Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Comm'rs*, 870 F.3d 471, 489 (6th Cir. 2017) (concluding that the facts of that case did not require it to determine whether the analogous section of the Americans with Disabilities Act (ADA) applied to arrests and noting that "[n]either the Supreme Court nor this circuit has squarely addressed whether Title II of the ADA applies in the context of an arrest"); see also, *Daniels v. Leslie*, 2018 WL 3216240, *4 (E.D. Mich. 2018). For this reason alone, this claim must be dismissed.

Even assuming Title II of the ADA applied to arrests, Title II of the ADA only provides for the imposition of liability upon public entities, not upon individuals employed by those entities. *Parker by Parker v. City of Highland Park*, 437 F.Supp.3d 609, 620 (E.D. Mich. 2020). As such, Plaintiff's Title II ADA claim alleged against all the individual Defendants must be dismissed as a matter of law.

Additionally, to state a claim under Title II of the ADA against CMHA, Plaintiff must allege, among other things, "a causal relationship between [Roquemore's] disability and

11

Defendants' alleged discriminatory conduct." *Parker*, 437 F.Supp.3d at 620, quoting *Daniels v. Leslie*, 2018 WL 3216240, at *4 (E.D. Mich. July 2, 2018). Stated another way, a plaintiff must plead, and ultimately establish, that "the defendant took action because of the plaintiff's disability, i.e., the plaintiff must [plead and] present evidence that animus against the protected group was a significant factor [in the defendant's conduct]." *Id.*; see also, *Smith v. City of Troy, Ohio,* 874 F.3d 938 (6th Cir. 2017) (finding Title II ADA claim failed where the plaintiff failed to establish that the defendants intentionally discriminated against him because of disability).

Here, Plaintiff has failed to plead any fact that could establish that Defendant Ragland used force against Roquemore because of his disability or that his disability was a significant factor in his decision to use force. Indeed, fatal to Plaintiff's claim is the fact that Defendant Ragland had no knowledge of Roquemore's identity or his alleged disability. Indeed, Plaintiff's Amended Complaint is void of any allegation suggesting that Defendant Ragland had any such knowledge because he did not. Likewise, Plaintiff has failed to plead that any of the other Defendants took any action against Roquemore because of his disability or that his disability was a significant factor in any decision they took. Further, while Plaintiff's Amended Complaint suggests that CMHA was aware of Roquemore's disability, there is no allegation indicating that Roquemore's disability motivated any of Defendants' actions. Indeed, awareness alone is insufficient to state a claim under Title II of the ADA. *Id.*

Plaintiff has also failed to allege a cognizable Title II failure to accommodate claim. The reasonable accommodation analysis in this context must be informed by the exigent circumstances inherent in the arrest context. *Roell*, 870 F.3d at 489. Further, courts in the Sixth Circuit have rejected "failure to train" ADA claims. See, e.g., *Burton v. City of Memphis*, No. 2:13-cv-02070, 2013 WL 5593069 at *2, 2013 U.S. Dist. LEXIS 146652 at *7 (W.D. Tenn. Oct. 10, 2013) (quoting

12

*Scozzari v. City of Clare*, 723 F. Supp. 2d 974, 981 (E.D. Mich. 2010)) ("A plaintiff may not, however, pursue a 'failure to train' ADA claim arguing that law enforcement officials would have handled the arrest properly if they had been properly trained to 'handle individuals with mental health problems.'"). Here, to the extent that Plaintiff's ADA accommodation claim arises from Plaintiff's, albeit inaccurate, allegation that CMHA failed to train Defendant Ragland, such a claim is not supported by law. As such, Plaintiff's ADA accommodation claim must fail for this additional reason.

### G. Defendants Are Entitled to Statutory Immunity Regarding Plaintiff's Negligence Claim. (Count IV).

For the same reasons set forth in detail in Section E, *supra*, CMHA is entitled to statutory immunity regarding Plaintiff's negligence claim. *Bowman v. City of Fairview Park, et al.*, N.D.Ohio No. 1:23 CV 1406, 2024 WL 183909, *7 (finding the city was entitled to immunity from the plaintiff's negligence claim).

Furthermore, the individual Defendants are entitled to statutory immunity pursuant to R.C. § 2744.03(A)(6). In that regard, Ohio law is clear that employees of political subdivision cannot be held personally liable for mere negligence. *Id.*, citing *Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 36 (Ohio 1994); see also *Shevlin v. Cheatham*, 211 F. Supp. 2d 963, 973 (S.D. Ohio 2002) ("Pursuant to [Ohio Rev. Code 2744.03(A)(6)], a police officer cannot be held personally liable for mere negligence, but only for actions that fall into one of the...statutory exceptions to the immunity." (citing *Fabrey*)). Here, Count IV of Plaintiff's Amended Complaint is, on its face, a negligence claim. Plaintiff, however, improperly attempts to overcome the individual Defendants' entitlement to statutory immunity by alleging, "[e]ach Defendant acted not only negligently but also with malicious purpose, in bad faith, and/or in a wanton or reckless manner." (Doc. #14, PageID #125, at ¶ 135). Plaintiff cannot have it both ways. Put another way,

13

Plaintiff cannot assert a claim for negligence and also allege that Defendants acted with intent. For these reasons, Count IV of Plaintiff's Amended Complaint must be dismissed as a matter of law as to all Defendants.

## III. CONCLUSION

For the reasons set forth herein, the foregoing claims Plaintiff asserts are without basis in law. Accordingly, Defendants respectfully request this Court grant their Motion for Partial Judgment on the Pleadings and dismiss the foregoing claims as a matter of law.

Respectfully submitted,

*/s/ Aretta K. Bernard*
Aretta K. Bernard (0039116)
abernard@ralaw.com
Stephanie Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
P: 330.376.2700
F: 330.376.4577

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on January 13, 2025. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David B. Malik
david@davidmaliklaw.com
31320 Solon Road, Unit #19
Solon, Ohio 44139

*/s/ Aretta K. Bernard*
One of the Attorneys for Defendants