IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY ROQUEMORE, Individually and as the Administratrix of the Estate of Maalik Roquemore, Deceased,<br><br>　　　　　　　　　　　　　　Plaintiff,<br><br>Vs.<br><br>CUYAHOGA METROPOLITAN HOUSING AUTHORITY, et al.,<br>　　　　　　　　　　　　　　Defendants. | CASE NO.  1:24-CV-01434<br><br>JUDGE: DONALD C. NUGENT<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PEADINGS** |

　　　　Now comes Plaintiff Kimberly Roquemore ("Plaintiff"), by and through undersigned counsel, and respectfully opposes the Motion for Judgment on the Pleadings (ECF 32) filed by Defendants CMHAPD, CMHA and its employee/agents Chief Gonzalez, Deputy Chief McDowell, Commander Burdyshaw, FTO Smiddy, and CEO/Safety Director Patterson, pursuant to and in accordance with Rule 12(c) and Rule 8 of the Federal Rules of Civil Procedure. The Plaintiff's Memorandum in Opposition is attached hereto.

1

## I. FACTUAL ALLEGATIONS.

On September 5, 2022, Defendant Desmond Ragland, an on-duty officer for the CMHA police department (CMHAPD) was responding to a radio dispatch complaint of loud noise at the CMHA apartment complex where the deceased, Maalik Roquemore resided. As Officer Ragland drove into the housing complex on West 174th street, in his one-man CMHA PD car, he stated to himself and/or the person on the other end of his telephone call, "There's a male over here. Get the fuck out the way!" Maalik was shadowboxing and displaying visible and internally stimulated and exaggerated behaviors.

Officer Ragland saw Maalik and his behavior from his police SUV prior to getting out of his police vehicle. (ECF 14)[1], ¶59-60). Maalik was amid a mental health crisis and was acting erratically. In fact, Officer Ragland commented (which was caught on his body cam video) to a fellow officer, at some point after the interaction that Maalik "was mental". (ECF 14, ¶64.). Officer Ragland, seeing Maalik, stopped his patrol car, opened his driver's side door, and faced Maalik with his taser already drawn in his right hand. Maalik came up to Officer Ragland (demonstrating his erratic actions) and a momentary physical tussle ensued between Maalik and Officer Ragland. Officer Ragland, who seemed surprised by Maalik stated, "Motherfucker!". Simultaneously, Maalik used a distressed tone of voice possibly indicating a mental crisis by saying in an exaggerated manner and voice, "Nope! Nope! Nope!" repeatedly. (Id.) The resulting events and actions by Defendant Ragland in the fatal shooting of the unarmed Maalik Roquemore are detailed in the Plaintiff's ECF 14, which is incorporated herein by reference. (Id. at ¶65-¶79). Further, the facts regarding the direct personal and official capacity involvement of each of the named individual Defendants are detailed in the Plaintiff's First Amended Complaint, incorporated herein by reference at ¶80-¶109. (Id.)

---

[1] Plaintiff's First Amended Complaint

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12 (c) "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings, Fed. R. Civ. P. 12 (c). "A Rule 12(c) motion tests only the sufficiency of the complaint but does not resolve the merits of a plaintiff's claims or any factual disputes. *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). Thus, a complaint must provide a short and plain statement that provides the defendant with notice of the claim being asserted, and supply enough factual matter, taken as true, *to suggest* a violation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (hereinafter "*Twombly*") (emphasis added). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleading of the opposing party must be taken as true and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment" *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007) quoting *S. Ohio Bank v. Merrill Lynch, pierce Fenner & Smith.,* 479 F.2d 478, 480 (6th Cir. 1973). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. "*Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

In evaluating a Rule 12(c) motion, a court may consider the complaint, the answer, matters of public record whose authenticity is not in dispute, and exhibits attached to the complaint or

3

answer so long as they are "integral to the complaint and authentic." *Massey*, 759 F.3d 343, 347 (4th Cir. 2014); *Philips v. Pitt County Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009).

The Supreme Court explained in *Twombly* that a complaint is "not require[d] [to include] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662(2009), at 678. The court is to give the plaintiff the "benefit of imagination, so long as the hypotheses are consistent with the complaint." *Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002), at 514, 122 S. Ct. 992.

Two working principals underlie *Twombly* for a court determining whether a complaint alleges a plausible claim. First, a court must accept as true all well-pled facts and draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 253 (4th Cir. 2009). Second, determining whether a complaint states a plausible claim is context-specific, requiring the court to draw on its experience and common sense. *Twombly*, at 556. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft*, at 664. Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations and may proceed no matter if recovery seems unlikely. (*Twombly*, at 556, quoting *Scheuer v. Rhodes*, 416 U.S. 232(1974), 236, 94 S.Ct. 1683.

    **III.    CMHA Is a Political Subdivision, CMHAPD Is It's Law Enforcement Service Agency[2] and Chief Gonzales, Deputy Chief McDowell, Commander Burdyshaw, FTO Smiddy and CEO/Safety Director Patterson Are Policymaking Officials**

Plaintiff's First Cause of Action sets forth federal claims for relief: (1) A 42 USC 1983 excessive force claim against Officer Ragland and (2) a 42 USC 1983 *Monell* claim against each remaining Defendant. The use of excessive and unreasonable force by Officer Ragland is currently not the subject of Defendants 12(c) motion and therefore requires no response at this time from Plaintiff. With regard to the claims alleged against the political subdivision CMHA, and its associated law enforcement service agency, CMHAPD, all actions occurred through CMHA personnel. Chief Gonzalez, Deputy Chief McDowell, Commander Burdyshaw, FTO Smiddy and CEO/Safety Director Patterson, are stated to be CMHA policymakers, and therefore, each is sufficiently pled for the *Monell* claim. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), *Leach v. Shelby County Sheriff*, 891 F.2d. 1241, 1245 (6th Cir 1989).

    **A.    Analysis of Plaintiffs *Monell* Claim Against CMHA, CMHAPD, Policymaker Chief Gonzalez, Policymaker Deputy Chief Victor McDowell, Policymaker Commander Burdyshaw, Policymaker Field Training Officer Smiddy and Policymaker CEO/Safety Director Patterson**

"[A] governmental entity is liable under §1983 only when the entity itself is a moving force behind the deprivation; thus, in an official capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (citations and internal quotation marks omitted); *Monell*, 436 U.S. at 691 "[The County[3] can be sued under §1983 where] the action that is alleged to be unconstitutional implements or executes a policy, statement,

---

[2] CMHAPD was originally named as a Defendant in this lawsuit out of an abundance of caution. This was due to evidence that Chief Gonzales was acting on behalf, of and in the name of, CMHAPD when he executed in writing, two separate and extensive operational memorandums with City of Cleveland/Cleveland Division of Police. Though no depositions have yet occurred, Plaintiff is now currently satisfied upon additional research (receipt of public records), that a 42 USC 1983 action should not, in this case, currently embrace or support the permanent inclusion of CMHAPD as a separate legal entity or proper Defendant.

[3] The reference to County applies to CMHA as a political subdivision.

ordinance, regulation, or decision officially adopted and promulgated by that body's officers." A political subdivision, "cannot be held liable under §1983 on a *respondeat superior*[4] theory." *Monell*, 436 U.S. at 691. An official [political subdivision's] "policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011).

To withstand the current 12(c) motion, the Plaintiff must have adequately alleged, "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Plaintiff asserts that she has adequately alleged sufficient facts against CMHA and the individual Defendants named in their personal capacity who were each working for CMHA prior to, and at the time of, the shooting; 1) the existence of an illegal and official policy; 2) that an official with final decision making authority ratified the illegal action; 3) that there exists within CMHA a policy of inadequate training or supervision; and 4) the existence of a custom of tolerance of, or acquiescence to, federal rights violations. The individual Defendants are also liable for their personal misconduct in *inter alia,* condoning, ratifying, encouraging and/or acquiescing in the promotion of a policy and policymaking that implemented the use of inadequately trained officers on the streets of CMHA properties.

There are actually two independent allegations for failure to train set forth in Plaintiff's First Amended Complaint. The first arises from Defendants CMHA/CMHAPD's inadequately

---

[4] Therefore, in retrospect, Plaintiff acknowledges the County cannot be held liable for the allegations in Plaintiff's state claim.

structured probationary officers' field training "program".[5] The inadequacy of CMHA's via CMHAPD's Field Training Program (hereinafter "FTP") is partially demonstrated by Defendants' submission of Amended Answer exhibits, identified by Defendants as the "CMHA/CMHAPD training documentation for Officer Ragland". (Amended Answer ¶6).

Defendant's Exhibit A is submitted with its Amended Answer, in a contextual vacuum, with no broader context assigned, no description of the nature of the training program, where Exhibit A fits into an overall CMHA/CMHAPD training program, what the initials DW signify, what the numerical categories represent within the context of field training or, whether it is part of a broader, more comprehensively structured and compliant Ohio Peace Officers Training Academy (OPOTA) approved FTO program. Furthermore, the origin of Exhibit A is not provided. This exhibit does not vitiate the Plaintiff's assertions regarding training in her First Amended Complaint and further, its inclusion by the Defendants in their Amended Answer signifies they have received "fair notice" and plausibility of the Plaintiff's claims.

Exhibit B (also referenced in Amended Answer ¶6) is also attached without adequate explanatory context or reference to Field Training activity on the part of Officer Ragland. Again, there is simply no adequate explanatory context assigned to these stand-alone exhibits introduced by the Defendants that renders Plaintiff's facts insufficient as a matter of law. Nor does Exhibit B vitiate any of the Plaintiff's sufficiently pled material facts related to any claim in her First Amended Complaint[6]. Defendants have not demonstrated as a matter of law, that the Plaintiff's factual assertions about Officer Ragland's inadequate training were, in the larger context, not well pleaded. Contrary to Defendants' assertions, the Plaintiff has throughout the First Amended Complaint adequately and truthfully alleged sufficient material facts to demonstrate a failure to

---

[5] The term "Program" to identify the sub-adequate training at CMHA/CMHAPD is used only for lack of a better identifier and should not be construed as a fact that a training program even exists at CMHA/CMHAPD.
[6] In fact, the emblem in the upper right corner of Exhibit B noted as "Law enforcement accreditation "CALEA" is simply that – a stamp which can be bought on the internet for twenty-nine dollars ($29)[6], and is hardly evidence of a legitimately accredited FTP as Defendant CMHA suggests from their Exhibition.

train Desmond Ragland via a post basic training FTP. Defendants CMHA and their individual Defendant policymakers as alleged, wantonly and recklessly, failed to adequately train officers who act unconstitutionally as alleged in the First Amended Complaint.

With respect to Crisis Intervention Training, as set forth in the First Amended Complaint, the Defendants also failed to provide Officer Ragland with adequate post-basic training Crisis Intervention Training, (hereinafter "CIT") an ADAMHS Board community based field training program through which, had Officer Ragland been provided the adequate CIT training, he would have also been better trained to interact and de-escalate Maalik Roquemore on September 5, 2025 during his mental health crisis and as pleaded, Maalik would not be deceased. Defendants again have not demonstrated as a matter of law that such facts in the First Amended Complaint are insufficient.

Plaintiff has sufficiently pled in her First Amended Complaint, ¶six[7] (6), that (a) Officer Ragland was inadequately trained (as evidenced by the shooting death of the unarmed Maalik) and (b) CMHA and its law enforcement agency CMHAPD unequivocally caused the "premature placement of Officer Ragland, into the one-man CMHAPD patrol car without an adequately trained Field Training Officer and/or supervising officer." The Plaintiff also specifically states and sufficiently factually alleges in ¶six[8] (6) in her First Amended Complaint that "CMHAPD[9] deliberately and with intention ratified[10] a shortcut of Officer Ragland's training program resulting in Officer Ragland receiving only fifteen (15) weeks out of the CMHAPD mandatory twenty-four (24) weeks![11] As reasonably inferred from the First Amended Complaint, *this equates to a deficit*

---

[7] Id., Page 4
[8] Id., Page 4
[9] Plaintiff now agrees that CMHAPD is not a proper legal entity for purposes of this lawsuit.
[10] ¶117, First Amended Complaint
[11] With respect to the individual Defendants, specifically Chief Gonzales, Deputy Chief Victor McDowell, Commander Burdyshaw, FTO Training Officer Smiddy, Safety Director Patterson and Officer Ragland Plaintiff have adequately stated that each individual Defendant was personally involved as an employee of CMHA, and that CMHA and each individual Defendant, by policy or custom, condoned, acquiesced and/or ratified field training shortcuts for probationary employee Officer Ragland.

8

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS
Case No. 1:24-cv-01434

*of 37.5% of the full field training weeks.* Put in other terms, Officer Ragland, at the young age of only 22 (as of July 8, 2022) received less than 2/3 of the supposed mandatory training required by CMHA and CMHAPD on September 5, 2022.

Plaintiff further pleads in ¶six[12] (6) that CMHA and CMHAPD both *encouraged*[13] Officer Ragland to work on the streets of CMHA properties, alone, while not being fully and adequately field trained. Plaintiff factually alleges these Defendants *ratified and encouraged* Ragland to patrol alone, unmonitored and unsupervised by an FTO or other police officer. The Plaintiff further factually alleged CMHA and CMHAPD did not take any action to change or correct this underlying training failure and fatal work assignment of Officer Ragland to the streets of CMHA. In addition, Plaintiff factually alleges that had CMHA/CMHAPD, 1) adequately trained Office Ragland, and 2) had placed another Officer with him for supervision in the weeks following the early training termination, the death of Maalik Roquemore, on September 5, 2022, would have been avoided.

      B.      **Plaintiff's Explicit Reference to the July 8, 2022 Document in Paragraphs 28, 96 and 97 Of the First Amended Complaint**

The Plaintiff, in numerous paragraphs throughout the First Amended Complaint, makes principal reference to one specific CMHAPD agency document (which at the time of filing was not marked as an exhibit by Plaintiff) that she was able to obtain pre-suit from a Public Records Request sent to CMHAPD[14]. That document is identified in ¶28 of the First Amended Complaint.

The Plaintiff first factually pleaded that there is a CMHA/CMHAPD law enforcement agency document which is dated July 8, 2022. The Plaintiff factually alleges its identity to be a CMHAPD agency memorandum. Plaintiff later in ¶96 of her Fist Amended Complaint also refers

---

[12] Id.,
[13] ¶ 13 and 96, First Amended Complaint
[14] Id, ¶s 28,29, 30, 31, 32, 33 each refer to the July 8, 2022, Field Commander Evaluation of Officer Ragland #57 and since the document has been referenced in the Amended Complaint, it is the subject matter of a Motion To Supplement the First Amended Complaint.

to the July 8, 2022 document as the *Field Commander Evaluation of Officer Ragland #57* and then sufficiently indicates in ¶97, that "This document was created in the ordinary course of business by CMHAPD staff Chief Gonzales, Deputy Chief McDowell, Police Commander Burdyshaw, FTO Smiddy and CEO Patterson and Jon Does I-X [who] had actual or constructive notice that the policy and custom of Defendants creating an abbreviated and incomplete Field Training Program would result in and cause CMHAPD officers (including Ragland) to remain deliberately indifferent when working alone (without guidance and supervision) and remain inadequately trained in the safe management and de-escalation of an individual exhibiting abnormal mental or psychological behavior and mental health crisis, and that this failure to train and supervise, further, would cause officers to violate an individual's constitutional rights."

The July 8, 2022 referenced document proves that the individual Defendants as named policymakers acted in their personal and official capacities. Plaintiff asserts that describing this document in her First Amended Complaint adequately informs and supports Plaintiff's allegations that *each* of the Defendants supported and ratified Officer Ragland's truncated weeks of FTO training, and, despite Ragland not being fully field trained, *each* Defendant instructed and ratified the decision to place Officer Ragland onto the streets of CMHA unsupervised. CMHA's acts of their policymakers were pleaded, personally and officially.

As pleaded, Gonzales, Burdyshaw, McDowell, Smiddy and Patterson's direct personal, and official, actions were just one example of the implementation and encouragement of the training shortcut in the form of policy and custom within CMHA. CMHA's law enforcement agency CMHAPD, along with Policymaker Chief Gonzalez, Policymaker Victor McDowell, Policymaker Commander Burdyshaw, Policymaker Field Training Officer Smiddy and Policymaker CEO/Safety Director Patterson were properly and sufficiently factually alleged by the Plaintiff to be involved as final decision makers and have adequately demonstrated; (1) the existence of an illegal official policy or legislative enactment; (2) the cultivation by an official

with final decision-making authority who ratified illegal actions; (3) the existence of a an enabled policy of inadequate training or supervision; and (4) the promotion of a custom of tolerance [of] or acquiescence [to] federal rights violations that amounts to fourth and fourteenth amendment violations.

As noted herein, the Plaintiff's allegations of the failure to adequately Field Train and Crisis Intervention train Officer Ragland are identified in the First Amended Complaint at ¶97 and described in the document known as the July 8, 2022 *Field Commander Evaluation of Officer Ragland #57*. Plaintiff further asserted that this document was created in the ordinary course of business by CMHAPD staff. Chief Gonalez, Deputy Chief McDowell, Police Commander Burdyshaw and Police Field Training Officer Smiddy were all actually or constructively aware that Officer Ragland's Field Training was dramatically cut short. Plaintiff did not assert that the individual Defendants signatures, names or initials were in the content of the actual document, but today asserts that this information is a reasonable inference. In addition to CEO, Patterson is the CMHA Safety Director. As Safety Director, he likely knew Ragland's training was cut short. Cutting Officer Ragland's training short was as pleaded, an CMHA policy and custom. Plaintiff further alleges that reducing field training would foreseeably lead to an officer's unconstitutional excessive force behavior, such as that exhibited by Ragland on September 5, 2022.

Turning back to Defendants Exhibit A, which is incorporated as part of Defendants Amended Answer. On its face the Exhibit appears to relate to Field Training (being the document title) and includes the phrase Experience Check List. The document contains two signatures – one of trainee Desmond Ragland and one of an apparent FTO (Field Training Officer) David Whitney. Each actual signature contains a CMHAPD agency badge number as a CMHAPD identifier. The attachment of Exhibit A is apparently being offered for its content and to demonstrate the fact that such a document exists.

With respect to Defendants' Exhibit A, the apparent initials are the name of the purported FTO, and the title of the document itself, *Experience Checklist*, suggests or infers on its face that Officer Ragland demonstrated proficiency in his knowledge of policies.

To Plaintiff, at this stage of the 12(c) proceedings, Defendants' Exhibit A seems to suggest there exists some form of an actual structured and accredited in-service CMHAPD Field Training Program for officers. However, whether an adequate program operated by CMHA and CMHAPD in fact has ever existed, or continues to exist, remains an open question and Exhibit A does not counter or negate the Plaintiff's sufficient material facts and reference to the July 8, 2022, memorandum, when taken as true.

### IV. Plaintiff Has Adequately Alleged Personal Liability Against CMHA's Gonzalez, McDowell, Burdyshaw, Smiddy and Patterson

Defendants ignore the fact that Section 1983 individual capacity claims differ from Section 1983 official capacity claims. *Colbert v. Cuyahoga Cnty*, 1:23CV1414 (N.D. Ohio Sep. 25, 2024), *citing Peatross v. City of Memphis,* 818 F.3 233, 240-41 (6th Cir. Term. 2016). While the courts have established that a claim against an official or an employee, in their official capacity for the entity against which a claim has also been made, is superfluous or redundant, courts have allowed claims to proceed against the official or employee for personal liability of the alleged wrongdoing. *Peatross v. City of Memphis*, at 241.

A Plaintiff must establish the liability of any individual defendant under Section 1983 by clearly showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. C*olbert, pg. 7, citing Heyerman v. Cnty. Of Calhoun,* 680 F.3d. 642, 647 (6th Cir. Mich.2012). Supervisory officials and employees cannot be held liable under Section 1983 solely on the basis of *respondeat superior,* and therefore, courts have held that the "defendant supervisor must be found to have encouraged the specific incident of misconduct or in some other way directly participated in it." *Essex v. County of Livingston*, 518 Fed.Appx.

351, 355 (6th Cir. Mich. 2013) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. Term. 2008). The Sixth Circuit has held that to be liable under Section 1983, [an official or employee] must at least implicitly authorize, approve, or knowingly acquiesce[15] in unconstitutional conduct. *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. Ky. 1982). Each individual Defendant is sufficiently alleged in the First Amended Complaint to have taken such action.

### V. Defendants' Claim For Statutory Immunity as to Plaintiff's State Law Claims as a Matter of Law is Wrong

The Defendants argue that they are protected by Ohio's doctrine of sovereign limited immunity as to the non-intentional torts under 2744.02. As to Defendants CMHA/CMHAPD, Plaintiff concedes that none of the enumerated exceptions to political subdivision immunity set forth in 2744.02(B) apply under the set of facts and circumstances alleged. However, 2744.09(E) provides "Civil claims based upon alleged violations of the constitution or statutes of the United States, except the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions." Thus, recovery has been permitted in situations involving claims based on unconstitutional conduct. *City of Englewood v. Turner*, 178 Ohio App.3d 179, 2008-Ohio-4637, ¶23

As to individual Defendants Gonzalez, McDowell, Burdyshaw, Smiddy, and Patterson, Plaintiff argues that under 2744.03(A)(6)(b) each loses the protection of statutory immunity. With respect to these individually named Defendants, ORC 2744.03 provides that individual political subdivision employees can be liable for (1) acts or omissions manifestly outside the scope of the employee's responsibilities; (2) acts or omissions [done] with malicious purpose, in bad faith *or in a wanton or reckless manner* and (3) where civil liability is expressly imposed by the Revised Code. O.R. C. 2744.03 (A)(6) (emphasis added).

---

[15] ¶ 3, First Amended Complaint.

In this case, Plaintiff adequately alleges that the actions of all of the individual Defendants as set forth in the Amended Complaint ¶¶22-43, and ¶¶80-109 were wanton and/or reckless, and directly lead to the wanton and/or reckless actions of Officer Ragland when he fatally shot Maalik Roquemore, who was unarmed. The Supreme Court of Ohio has defined "wanton" misconduct as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Hawkins v Ivy,* 50 Ohio St.2d 114 (Ohio 1977), at 117–118, 363 N.E.2d 367; *see also Black's Law Dictionary* 1613–1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results). Reckless conduct has been defined as "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct". *Thompson v. McNeill,* 53 Ohio St.3d 102 (Ohio 1990), at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk,* but the actor does not desire harm). *Anderson v. Massillon*, 2012 Ohio 5753 (Ohio 2012), at 273, 134 Ohio St. 3d 380.

Whether a political subdivision or its employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 1994- Ohio-368; *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208; *Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 8th Dist. No. 103566, 2017-Ohio-380, ¶26. It is certainly a question of fact to be determined by a jury whether all of the Defendants acted in a wanton and/or reckless manner when they accelerated, or in other words, cut short, Officer Ragland's basic FTO program and placed him on the streets of CMHA

in a solo patrol car, where there was a duty of care owed to the citizens of CMHA. There was a foreseeable risk in this conduct which they did not try to avoid.

### VI. Plaintiff's Americans with Disabilities Act Claim Should Not Be Dismissed

Defendant argues that Plaintiff's claim under Title II of the Americans With Disabilities Act ("ADA") 42 U.S.C. §12132, must be dismissed because the Ohio Supreme Court and the Sixth Circuit Court have issued case opinion that Title II of the ADA applies to arrests. (Doc #32, Page 11). While the specific issue of whether Title II applies to an arresting officer in the course of an arrest is developing in the courts, the courts *have found that* a person with a disability does have a viable claim under §1983. The drafters contemplated this exact type of coverage when they drafted the ADA, considering that it states "[a] public entity must reasonably modify it policies, practices, or procedures to avoid discrimination," unless the public entity can demonstrate "that modification would fundamentally alter the nature of its service, program, or activity." Title II Technical Assistance Manual, at https://www.ada.gov/taman2.html#II-3.6000. "Law enforcement officers should be prepared to make reasonable modifications, for example, by allowing, in appropriate circumstances, arrestees who are deaf to be handcuffed in front of their bodies so that they can communicate with others and by allowing detainees access to their medication." 28 C.F.R. § 35.150(b)(7). (as cited in the The ADA and City Governments: Common Problems, at Title II Technical Assistance, *The ADA and City Governments, Common Problems.)*

In the cases in which the court has specifically addressed the question, *generally,* the holding is that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents…prior to the officer's securing the scene and ensuring that there is no threat to human life*." Hainze v. Richards, 207 F.3d 795 (S.D.N.Y. 2015).* However, in *Hainze*, the court denied the officer's claims of qualified immunity finding that a reasonable jury could conclude that the plaintiff was undergoing a medical emergency and was subject to force by

law enforcement. Although it has historically been difficult for plaintiffs to state a claim for an ADA violation, the court in *Williams v. City of New York*, in denying the City's motion for summary judgment on the ADA claim, found that Title II does generally apply to interactions between individuals with a disability and arresting officers. The court opined that the reasonableness of accommodations under the ADA must be assessed in light of the totality of the circumstances of the case and further held that "on-the-street" interactions are not *categorically excluded* from Title II coverage. *Williams v. City of New York*, 121 F.Supp.3d 354 (SDNY 2015).

In the context of a claim for excessive use of force, recent cases have recognized that the use of force spectrum is different for officers when encountering a person with mental illness than it is for individuals without a mental illness. For example, in *Clem v. Corbeau*, 284 F.3d 543 (4th Cir. 2002), the plaintiff (the wife of a man with a mental illness whom was pepper sprayed and then shot three times after allegedly making threats and moving in a threatening manner) brought action alleging excessive force, failure to provide adequate training and supervision, and other state law claims. The court held that the officer's use of deadly force against the plaintiff with a mental illness was not justified under the Fourth Amendment, for purposes of officers' qualified immunity defense. The court found that the suspect had clearly established a right to be free from police officers' use of deadly force. The court noted that there may be instances in which a reasonable officer may be authorized to use deadly force against an unarmed, mentally ill person, when the officer has a sound reason to believe that such a person poses a serious threat to the safety of the officer or the safety of others. *Clem*, at 554, citing *Elliott v. Leavitt,* 99 F.3d 640, at 644.

In *Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th Cir. 1016), the court found that the "government's interest in seizing a mentally ill person differs in both degree and in kind from the use of force that would be justified against a person who has committed a crime or who poses a threat to the community. *Id*, at pg. *900, quoting Deorle v. Rutherford,* 272 F.3d 1272, 1282–83 (9th Cir.2001). The *Armstrong* court found that "even when [the] ideal course is not feasible, officers

who encounter an unarmed and minimally threatening individual who is "exhibit[ing] conspicuous signs that he [i]s mentally unstable" must "de-escalate the situation and adjust the application of force downward." *Armstrong*, at 900, citing *Martin v. City of Broadview Heights,* 712 F.3d 951, 962 (6th Cir.2013).

Increasingly, courts recognize that an obligation exists to provide accommodation to account for a mental disability. For example, in *Short v. City of Rochester*, 6:22-CV-06263 EAW (W.D.N.Y. Dec. 29, 2022), the court denied the City of Rochester's motion to dismiss holding that "under the ADA, it is not enough that police officers act reasonably once exigent circumstances arise; the ADA may require officers to provide a reasonable accommodation in order to ensure such exigent circumstances never arise in the first place noting that relevant considerations include "actions taken, and decisions made well before any shots are fired, such as whether police offers (trained in aggressive, law enforcement techniques) should have taken the lead in responding at all. *Id*., at page 10. (See also, *Estate of LeRoux v. Montgomery* County, 8:22-CV-00856-AAQ (D. Md. Mar. 20, 2023).

In this case, Defendants' argument that the ADA claim should be dismissed because the Ohio Supreme Court and the Sixth Circuit have never addressed the application of the ADA within the context of arrests, if accepted, removes the case from the judgment, judicial review and discretionary action of federal courts when those courts are presented with community mental health issues, such as is currently presented to this Court. In addition, and first and foremost, the facts and circumstances of this case were not within an active arrest. Defendant Ragland was responding to a noise complaint and once on scene, there have been no allegations set forth that a crime was taking place and/or that Ragland was attempting to place Maalik under arrest. Second, Defendant argues that the ADA only applies to entities and not to individuals. Clearly, as evidenced by the sampling of cases cited inter alia, it is established that the requirements of the ADA do apply to individuals employed by entities, and even to police officers responding to a

disturbance call. Finally, Defendant argues that for Plaintiff to state a claim under the ADA, she must establish a causal relationship between disability and the discriminatory conduct. That question surpasses the scope of the inquiry and review standard in a 12(b) motion to dismiss. This Court must consider the ADA claim at this stage only as to whether there are sufficient facts alleged, construed most favorably to Plaintiff, that 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal, supra.*

As pled in the facts of the Amended Complaint, CMHA had knowledge of Maalik's disability. In fact, CMHA had a requirement that documentation of a documented disability be provided to it and knew that its residential population consisted of individuals with disabilities. This should be constructive knowledge to CMHA PD and its employees and officers that there was a certainty of encountering people with disabilities when responding to dispatch calls. Plaintiff has sufficiently pled plausible facts that state a claim to relief. Maalik Roquemore's disability was documented with CMHA (A. C doc# 14, ¶ 51-54). Officer Ragland was heard stating that Maalik "was mental." (*Id*. ¶64, 77). Maalik was unarmed, not endangering any other individuals, and had retreated from Defendant Ragland after the initial encounter and the taser being discharged. The facts establish that Maalik did not pose a threat of harm or death to Defendant Ragland once Maalik had retreated at least 10-20 feet away. Defendant Ragland failed to implement *any further* de-escalation tactics available to him at that point. The facts and circumstances that lead to and surround the fatal shooting of Maalik fall squarely within the type of case this Court should not dismiss on the pleadings, regardless of the absence of any specific holdings within Ohio or the Sixth Circuit, because the claim has been upheld to go forward in other circuits.

### VII. Conclusion

This Court's Case Management Conference Minute Sheet indicates "incident may all be on video-AG investigated case-+much discovery on website." As it turns out the website contains primarily redacted material and 25 redacted videos making the availability of complete factual

information about the death of Maalik Roquemore unavailable to the Plaintiff. To date, no depositions have been taken, and written discovery is just now being exchanged.  Plaintiff therefore requests that this Court adopt its closing language from *Thomas v. CMHA*, (1:11 CV 2727) "[t]his case "may be assessed more properly following discovery on a motion for summary judgement." Plaintiff concedes, despite acting like a separate *de fact*o legal entity, the inclusion of CMHAPD is currently unsupported. However, Plaintiff requests that the Monell claim against CMHA, the personal claims against individuals, the state law wanton and reckless allegations against CMHA and the individuals, and the ADA claim survive.

                Respectfully submitted,

                /*s/ David B. Malik*
                David B. Malik
                David B. Malik (23763)
                Attorney at Law
                31320 Solon Road, Unit #19
                Solon, Ohio 44139
                P: 216.570.3898
                E: david@davidmaliklaw.com
                Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on February 11, 2025. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Aretta K. Bernard (0039116)
abernard@ralaw.com
Stephanie Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308

                                                                                                            /s/ David B. Malik
                                                                                                            **Attorney for Plaintiff**