# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY ROQUEMORE,** | ) | **CASE NO.  1:24 CV 01434** |
| | ) | |
| *Individually and as the Administratrix* | ) | |
| *of the Estate of Maalik Roquemore,* | ) | **JUDGE DONALD C. NUGENT** |
| *Deceased,* | ) | |
| | ) | |
| **Plaintiff,** | ) | (This Memorandum of Opinion and |
| | ) | Order Relates to Documents ECF #32, |
| **v.** | ) | ECF #35, ECF #39, and ECF #44) |
| | ) | |
| **CUYAHOGA METROPOLITAN** | ) | |
| **HOUSING AUTHORITY, et al.,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Defendants.** | ) | **AND ORDER** |

This matter is before the Court on three motions:  (1) *Defendants' Motion for Partial Judgment on the Pleadings* (ECF #32); (2) *Plaintiff's Motion for Leave to Supplement First Amended Complaint* (ECF #35); and (3) *Defendants' Motion to Stay Discovery Pending Ruling on Motion for Partial Judgment on the Pleadings* (ECF #39).[1]

---

[1]

The third-listed motion, *Defendants' Motion to Stay Discovery Pending Ruling on Motion for Partial Judgment on the Pleadings* (ECF #39), is included here for the purposes of clarity, completeness, and finality.  The *Motion to Stay Discovery* itself was granted by marginal entry order on February 27, 2025, on the same day as the filing of the motion.  (ECF #40).  On March 4, 2025, Plaintiff Kimberly Roquemore filed a *Plaintiff's Brief in Opposition Disputing a Materially Inaccurate Statement in the Government's (CMHA) Motion to Stay* (ECF #44).  As stated in that filing, "This Brief in Opposition for purposes of clarification does not challenge the Court's Marginal Entry (ECF #40) related to the government's motion, but it does challenge the

For the reasons set forth below:  (1) *Defendants' Motion for Partial Judgment on the Pleadings* (ECF #32) is GRANTED in part, and DENIED in part; (2) *Plaintiff's Motion for Leave to Supplement First Amended Complaint* (ECF #35) is DENIED as MOOT; and, (3) as indicated in note 1, *supra*, the issue raised in *Plaintiff's Brief in Opposition* (ECF #44) in connection with the previously-granted *Defendants' Motion to Stay Discovery Pending Ruling on Motion for Partial Judgment on the Pleadings* (ECF #39) was considered and incorporated into the Court's rulings.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

### A. **The Incident/Encounter at Issue**

This matter arises out of a September 5, 2022 encounter between Maalik Roquemore, a resident of an apartment complex owned by the Cuyahoga Metropolitan Housing Authority ("CMHA"), and CMHA Police Officer Desmond Ragland, whereby Officer Ragland used lethal force against Mr. Roquemore in the course of responding to a "loud noise" complaint at the CMHA apartment complex.  The encounter resulted in Mr. Roquemore's death.  (*See generally*, ECF #14, *First Amended Complaint*, ¶¶ 1-12).

---

governmental Defendants' material misrepresentation because of the potential that the misrepresentation will mislead the Court in its understanding when ultimately ruling on the Motion for Partial Judgment on the Pleadings."  (ECF #44, PageID #361).  The issue raised in the *Brief in Opposition* related to a perceived discrepancy between a statement made in *Defendants' Answer to Plaintiff's Amended Complaint* (ECF #16) and a statement made in the *Motion to Stay Discovery* (ECF #39) that one of the individual Defendants named in the *First Amended Complaint* (ECF #14) "was not involved in the incident" at issue in this case.  (*Compare* ECF #14, ¶ 41, PageID #108, and ECF #16, ¶ 41, PageID #141, *with* ECF #39, PageID #337).  Insofar as the *Brief in Opposition* raises an issue tangentially related to the *Motion for Partial Judgment on the Pleadings*, it is included here as a matter before the Court within the rulings made in this *Memorandum of Opinion and Order*.  (*See* Part II-C, *infra*).

The facts of the case, as described in the *First Amended Complaint* (ECF #14) and

*Plaintiff's Brief in Opposition to Defendants' Motion for Partial Judgment on the Pleadings*

(ECF #36),[2] are as follows:

On September 5, 2022, at approximately 12:37 am, Officer Desmond Ragland, an on-duty

police officer for the CMHA Police Department ("CMHAPD"), driving in a one-person

CMHAPD vehicle, responded to a radio dispatch complaint of loud noise at the CMHA

apartment complex where Maalik Roquemore resided, on West 174th Street, in Cleveland, Ohio.

(ECF #14, ¶ 59; ECF #36, p.2, PageID #314).[3]  As Officer Ragland arrived, while still in his

police vehicle, he encountered Mr. Roquemore, who, observers reported, was "shadowboxing

and displaying internally stimulated and exaggerated behaviors."  (ECF #14, ¶ 60-61; ECF #36,

p.2, PageID #314).  Roquemore is described in the *First Amended Complaint* as having "suffered

from medically documented schizophrenia and Post-Traumatic Distress Disorder."  (ECF #14,

¶ 3).

When Officer Ragland first arrived at the scene, Mr. Roquemore was standing in the

courtyard of the apartment complex, wearing a white T-shirt, pajama pants, and white tube socks

covering both lower legs, and no shoes.  (ECF #14, ¶¶ 60-62).  Officer Ragland, while on a

telephone call at the time, believed that the person he saw may have been attempting to flag him

---

[2]

    *See JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) ("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleading of the opposing party must be taken as true, . . . .") (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1983)).

[3]

    Record references to the *First Amended Complaint* are identified by paragraph number versus the ECF "PageID" number used for other papers..

down.  (ECF #14, ¶ 61).  Upon arriving to where Mr. Roquemore was located, Officer Ragland stopped his vehicle, opened the driver's side door, and faced Mr. Roquemore with his taser drawn in his right hand.  (ECF #14, ¶ 65; ECF #36, p.2, PageID #314).  Roquemore approached Officer Ragland, still demonstrating his erratic behavior, initiating a physical tussle between the two.  (ECF #14, ¶ 64; ECF #36, p.2, PageID #314).  Officer Ragland, surprised by the sudden approach, let out an expletive, while at the same time Mr. Roquemore responded repeatedly, in an exaggerated and distressed voice, "Nope! Nope! Nope."  (ECF #14, ¶ 64; ECF #36, p.2, PageID #314).

At some point in this encounter, Officer Ragland, while still sitting in the police car, fired a single taser cartridge at Mr. Roquemore, striking Roquemore with one taser prong in the left chest, but also striking himself in his left hand with the other prong.  (ECF #14, ¶ 65).  At some point around this time, Officer Ragland left his police vehicle.

After the initial "tussle," Mr. Roquemore disengaged from the confrontation, and began to run around the police car.  (ECF #14, ¶¶ 66, 69).  At this point, Officer Ragland drew his service weapon from its holster and intercepted Mr. Roquemore as he came around the vehicle.  (ECF #14, ¶ 69).  Mr. Roquemore, upon seeing Officer Ragland, then ran off toward a grassy area some distance away.  (ECF #14, ¶ 69).  Officer Ragland then, on multiple occasions, ordered Roquemore to stay away.  (ECF #14, ¶ 69).

According to the *First Amended Complaint*, Officer Ragland then fired one 9mm bullet directly into Mr. Roquemore's torso, striking him in the left hip, severely wounding and disabling him.  (ECF #14, ¶70).  Shortly thereafter, Officer Ragland fired another 9mm bullet, striking Mr. Roquemore in the left front chest, which caused Roquemore to fall to the ground.

-4-

(ECF #14, ¶ 71). Officer Ragland then handcuffed Mr. Roquemore's hands behind his back, and went to the police vehicle to get a first aid kit. (ECF #14, ¶ 72).

Officer Ragland then later brought Mr. Roquemore onto his knees, while pulling him along the grass to the sidewalk using the handcuffs as a handle. (ECF #14, ¶ 73). Officer Ragland then notified EMS of the shooting via the county dispatch system. (ECF #14, ¶ 77). When the EMS crew arrived, Officer Ragland noted to the EMTs and others, "He was mental." (ECF #14, ¶ 77). Officer Ragland then removed the handcuffs from Mr. Roquemore, and the EMT medics placed Roquemore on a gurney and transported him to Fairview General Hospital. (ECF #14, ¶ 78). At the hospital, after thirty minutes of attempting to resuscitate Mr. Roquemore, Roquemore was declared dead at 1:35 am, on September 5, 2022. (ECF #14, ¶ 79).

On August 22, 2024, Kimberly Roquemore, Maalik Roquemore's mother, as Administratrix of Maalik Roquemore's estate, filed a *Complaint* in this Court against Officer Ragland, the CMHA, CMHAPD, and five other individuals (related to CMHA and the CMHAPD), asserting claims of excessive force and failure to adequately train in violation of 42 U.S.C. § 1983 (*First Cause of Action*), Wrongful Death under Ohio law (*Second Cause of Action*), violation of the Americans With Disabilities Act under 42 U.S.C. § 12101, *et seq*. (*Third Cause of Action*), and a "State Law Claim" which generally asserted a breach of a reasonable duty of care owed to Mr. Roquemore by negligence or "malicious purpose" (*Fourth Cause of Action*). (ECF #1).

On September 24, 2024, Kimberly Roquemore filed a *First Amended Complaint* against each of these same persons alleging the same four causes of action. (ECF #14). The parties are described in more detail below.

## B. **The Parties**

Plaintiff Kimberly Roquemore is the duly appointed and authorized Administratrix of the Estate of Maalik Roquemore, per entry of the Cuyahoga County Probate Court.  (ECF #14, ¶ 19; ECF #14-1, *Copy of Court Entry*).

Defendant Officer Desmond Ragland is (or was at the time of the events related to the *First Amended Complaint*) a law enforcement officer employed by the CMHAPD.  He has been sued both individually and in his official capacity as an employee of the CMHAPD.  (ECF #14, ¶ 21).

Defendant CMHA is a federally and Cuyahoga County funded organization, whose mission is to provide safe housing and safe police services to the residents of its housing units and facilities.  (ECF #14, ¶ 25).

Defendant CMHAPD is a state certified police force, operating under the laws, statutes, and codified ordinances of the State of Ohio and the United States.  (ECF #14, ¶ 29).

Defendant Andrés González is identified as the Chief of Police for the CMHAPD.  He has been sued both individually and in his official capacity as an employee of the CMHAPD.  (ECF #14, ¶ 22).

Defendant Victor McDowell is identified as the Deputy Chief of Police for the CMHAPD.  He has been sued both individually and in his official capacity as an employee of the CMHAPD.  (ECF #14, ¶ 32).

Defendant Thomas Burdyshaw is identified as the Commander of Field Operations for the CMHAPD.  He has been sued both individually and in his official capacity as an employee of the CMHAPD. (ECF #14, ¶ 35).

-6-

Defendant John Smiddy is identified as the Field Training Officer Program Supervisor for the CMHAPD. He has been sued both individually and in his official capacity as an employee of the CMHAPD. (ECF #14, ¶ 38).

Defendant Jeffery Patterson is identified as the Chief Executive Officer and Safety Director of CMHA. He has been sued both individually and in his official capacity as an employee of CMHA. (ECF #14, ¶ 41).

Plaintiff's initial *Complaint* and *First Amended Complaint* also names as Defendants "John Does (I-X)." (ECF #14, ¶ 44).

### C. The Claims Asserted in the First Amended Complaint

The *First Amended Complaint* asserts four claims against CMHA, the CMHAPD, and Defendants Ragland, González, McDowell, Burdyshaw, Smiddy, and Patterson in their official and individual capacities. The *First Cause of Action* asserts excessive force and failure to train, in violation of 42 U.S.C. § 1983, specifically alleging that each of the Defendants "under color of law deprived Maalik Roquemore of rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on unreasonable searches and seizures contained in the Fourth and Fourteenth Amendments to the United States Constitution." (ECF #14, ¶¶ 113-123). The *Second Cause of Action* asserts wrongful death under Ohio law, "resulting in damages recoverable under [Ohio Revised Code] § 2125.02 and pre-death agony as well." (ECF #14, ¶ 125). The *Third Cause of Action* asserts a violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, specifically alleging that each of the Defendants,

with knowledge of Maalik Roquemore's mental health disabilities,[4] "deliberately, indifferently, and intentionally discriminated against Maalik [Roquemore] and failed to provide him a reasonable and safe accommodation when they used unnecessary and excessive force against him because of his disability." (ECF #14, ¶¶ 127-128). The *Fourth Cause of Action* is identified as "State Law Claim," and generally asserts a negligent and/or "malicious" breach of a duty of care owed to Maalik Roquemore by failing to "develop and implement effective safety and training policies, customs, practices, and procedures[,] and to be in compliance with Title II of the [Americans With Disabilities Act]." (ECF #14, ¶¶ 131-136).

### D. The Motions Before the Court

There are presently three motions before the Court: (1) *Defendants' Motion for Partial Judgment on the Pleadings* (ECF #32); (2) *Plaintiff's Motion for Leave to Supplement First Amended Complaint* (ECF #35); and (3) *Defendants' Motion to Stay Discovery Pending Ruling on Motion for Partial Judgment on the Pleadings* (ECF #39). The first two are before the Court for ruling; the third (the *Motion to Stay Discovery*) was previously granted, but is addressed here insofar as certain post-ruling statements made by Plaintiff regarding the motion relate to the pending *Motion for Partial Judgment on the Pleadings*. (*See* note 1, *supra*). Each will be addressed in turn.

---

[4] The "knowledge" identified is that of CMHA institutionally, and not of any individual specifically. (*See* ECF #14, ¶ 127) ("Maalik had a medically documented and confirmed mental illness (known to CMHA), was an otherwise qualified individual with a disability, and he was being excluded from participation in, and being denied the benefits of, or being subjected to discrimination under CMHA, CMHAPD programs and the ADA.").

## II.  LEGAL ANALYSIS

### A.  Defendants' Motion for Partial Judgment on the Pleadings

On January 13, 2025, Defendants CMHA, CMHAPD, González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson moved this Court for partial judgment on the pleadings, asking the Court to dismiss the following claims of the *First Amended Complaint* (ECF #14) as being "not viable as a matter of law":

    (1)    All claims alleged against CMHAPD;

    (2)    All official capacity claims against the individual Defendants;

    (3)    The *First Cause of Action* excessive force and failure to train claims under 42 U.S.C. § 1983 asserted against Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson;

    (4)    The *Second Cause of Action* claims for wrongful death under Ohio law as to CMHA, Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson;

    (5)    The *Third Cause of Action* claims under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as to all Defendants; and

    (6)    The *Fourth Cause of Action* claims under Ohio law alleging "negligence" against all Defendants.

(ECF #32, *Defendants' Motion for Partial Judgment on the Pleadings*, p.1, PageID #288).

Not included in the *Defendants' Motion for Partial Judgment on the Pleadings* are the *First Cause of Action* excessive force and failure to train claims under 42 U.S.C. § 1983 against Defendants CMHA and Ragland, and the *Second Cause of Action* wrongful death claim against Defendant Ragland.  (ECF #32, *Memorandum in Support of Motion*, p. 1, n.2, PageID #290).[5]

---

[5]

    Defendants CMHA and Ragland have expressed an intention to file a later motion for summary judgment on these claims after the completion of discovery.  (ECF #32, *Memorandum in Support of Motion*, p. 1, n.2, PageID #290).

## 1. *<u>Standard of Review for Judgment on the Pleadings</u>*

Federal Rule of Civil Procedure 12(c) provides that any party may move for judgment on the pleadings at any time after the pleadings have been closed.  FED. R. CIV. P. 12(c).  The standard for determining a motion for judgment on the pleadings under Rule 12(c) is the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Sampson v. Cleveland,* No. 1:20-CV-00741, 2020 U.S. Dist. LEXIS 231649, at *3 (N.D. Ohio Dec. 9, 2020).  In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual material" which, if accepted as true, would state a valid "claim to relief that is plausible on its face."  *Sampson,* 2020 U.S. Dist. LEXIS 231649, at *4; *see also Askew v. True Hearts of Care, LLC*, No. 5:19-CV-01619, 2020 U.S. Dist. LEXIS 2187, at *4 (N.D. Ohio Jan. 7, 2020) ("While detailed factual allegations are not required, Fed. R. Civ. P. 8(a)(2) calls for sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Colbert v. Cuyahoga Cnty, Ohio*, No. 1:23-CV-01414, 2024 U.S. Dist. LEXIS 173672, at *7 (N.D. Ohio Sept. 25, 2024) (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011).  Although a court must accept the well-pleaded allegations of a complaint as true, it "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *Willman v. Attorney General of the United States*, 972 F.3d

-10-

819, 823 (6th Cir. 2020) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)).

The Court also keeps in mind that "[a] Rule 12(c) motion tests only the sufficiency of the

complaint [and] does not resolve the merits of a plaintiff's claims or any factual disputes,"

*Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (insert supplied).  As the Supreme Court

noted in *Twombly*, a complaint is "not require[d] [to include] heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570.

Additionally, when a Court considers either a motion to dismiss, or a motion for judgment

on the pleadings applying the same standards, the Court keeps in mind that the Sixth Circuit

generally does not permit "group pleading" – wherein a generic reference to "the Defendants" is

used without specifying which Defendant or Defendants are involved and the acts taken by them.

*Robertson v. University of Akron School of Law, et al.*, No. 5:20-CV-01907, 2021 U.S. Dist.

LEXIS 157345, at *14-*15 (N.D. Ohio Aug. 20, 2021), *aff'd*, 2022 U.S. App. LEXIS 15384 (6th

Cir. June 23, 2022):

> Courts within the Sixth Circuit, however, do not permit "group pleading" outside
> of certain fraud claims.  in *Mhoon v. Metro. Gov't of Nashville & Davidson Co.,
> Tenn.*, No. 3:16-cv-1751, 2016 U.S. Dist. LEXIS 148301, 2016 WL 6250379, at *3
> (M.D. Tenn. Oct. 26, 2016), the court found that excessive force and deliberate
> indifference allegations failed to indicate whether and how each individual
> defendant was involved in the use of excessive force.  Like the present case, the
> plaintiff used generic references to "defendants," without specifying which
> defendants were involved, "even where it [was] clear that not all of them could
> have been involved."  2016 U.S. Dist. LEXIS 148301, [at *8] [2026 WL 6250379]
> at *3.  The court concluded that this "form of group pleading [was] insufficient to
> establish that any one" of the defendants acted in an unconstitutional manner. *Id.*
> (citing *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758, 773 (M.D.
> Tenn. 2016) ("A complaint that fails to impute concrete acts to specific litigants,
> fails to state a plausible claim.") (quotation marks and citations omitted)); *see
> Gamrat v. Allard*, 320 F. Supp. 3d 927, 942 (W.D. Mich. 2018) (rejecting "group
> pleading" of claim that individual defendants violated 18 U.S.C. § 2511 by

-11-

disseminating information obtained through wire taps).

*Robertson*, 2021 U.S. Dist. LEXIS 157345, at *14-*15 (clarifying citation inserts provided).

## 2.  *The Claims on Which Judgment on the Pleadings is Sought*

### (a)  *All Claims Asserted Against Defendant CMHAPD*

All four causes of action asserted in Plaintiff's *First Amended Complaint* include

CMHAPD as a Defendant. (*See* ECF #14, ¶¶ 114, 118-121 [*First Cause of Action*, 42 U.S.C.

§ 1983], ¶ 125 [*Second Cause of Action*, Wrongful Death], ¶¶ 127-129 [*Third Cause of Action*,

Americans With Disabilities Act], and ¶¶ 131-134 [*Fourth Cause of Action*, Negligence]).

It is well-established under Ohio law that police departments, like CMHAPD, are not "*sui

juris*," in effect, they are not separate legal entities independent of the municipal entities they

serve capable of being sued. *See Jackson v. Cuyahoga Cnty. Common Pleas Court*, No. 1:23-

CV-02388, 2024 U.S. Dist. LEXIS 53251, at *10; *Nash v. Cuyahoga Metropolitan Hous. Auth.*,

No. 1:07-CV-02008, 2008 U.S. Dist. LEXIS 12884, at *4-*5 (N.D. Ohio Feb. 21, 2008); *Fuller v.

Cuyahoga Metropolitan Hous. Auth.*, No. 1:05-CV-00009, 2005 U.S. Dist. LEXIS 63742, at *2-

*3 (granting CMHAPD's motion to dismiss) ("The case law is overwhelming and clear.  Police

departments are not legal entities which can be sued.").  In fact, Plaintiff now concedes this point.

(*See* ECF #36, *Plaintiff's Brief in Opposition to Defendants' Motion for Partial Judgment on the

Pleadings*, p. 5, n.2, PageID #317) ("Plaintiff is now currently satisfied upon additional research .

. . that a 42 USC 1983 action should not, in this case, currently embrace or support the permanent

inclusion of CMHAPD as a separate legal entity or proper Defendant"); *id.*, at p. 19, PageID #331

("Plaintiff concedes, . . . the inclusion of CMHAPD is currently unsupported").

Accordingly, Defendant CMHAPD is entitled to judgment on the pleadings with respect

-12-

to *all* claims of the *First Amended Complaint* asserted against Defendant CMHAPD.

**(b)** ***All "Official Capacity" Claims***
***Asserted Against All the Individual Defendants***

All four causes of action asserted in Plaintiff's *First Amended Complaint* also include "official capacity" assertions against each of the individual Defendants named in the case, González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson.[6]

Where there are claims against a municipal entity defendant along with "official capacity" claims against an officer or agent of that municipal entity, the official capacity claims are redundant and should be dismissed. *See Colbert v. Cuyahoga County, Ohio*, No. 1:23-CV-01414, 2024 U.S. District LEXIS 173672, at *7 (N.D. Ohio Sept. 25, 2024); *see also Davison v. City of Lorain*, No. 1:24-CV-00227, 2024 U.S. Dist. LEXIS 99565, at *21 (N.D. Ohio June 5, 2024) (Official capacity suits "'represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). "When a § 1983 complaint asserts a claim against a government entity and a government official in his official capacity, federal courts will dismiss the official-capacity claim." *Kouider on behalf of Y.C. v. Parma City School Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 780 (N.D. Ohio 2020); *see also Williams v. City of Columbus*, No. 2:22-CV-01831, 2024 U.S. Dist. LEXIS 5238, at *65-*66 ("Courts within the Sixth Circuit routinely dismiss official-capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself.").

---

[6]     This is stated explicitly only as to individual Defendants Ragland and González, (*see* ECF #14, ¶¶ 21, 24), but it is evident from the assertions of the *First Amended Complaint* that the "official capacity" assertions are meant to apply to each of the individual Defendants.

Plaintiff now concedes this point.  (*See* ECF #36, *Plaintiff's Brief in Opposition to Defendants' Motion for Partial Judgment on the Pleadings*, p. 12, PageID #324) ("[T]he courts have established that a claim against an official or an employee, in their official capacity for the entity against which a claim has also been made, is superfluous or redundant[.]").

Accordingly, Defendants González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson are entitled to judgment on the pleadings with respect to the "official capacity" claims asserted against them.

### (c)  *The 42 U.S.C. § 1983 "Individual Capacity" Claims Asserted Against Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson*

The "individual capacity" claims asserted against Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson present a closer call.[7]

Section 1983 individual capacity claims differ from section 1983 official capacity claims. *Colbert,* 2024 U.S. District LEXIS 173672, at *8.  "[A]n individual capacity claim seeks to hold an official personally liable for the wrong alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).  Sustaining an individual capacity claim under 42 U.S.C. § 1983 is measured against an admittedly high bar.  A plaintiff cannot establish the liability of any individual defendant under Section 1983 absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Colbert,* 2024 U.S. District LEXIS 173672, at *8 (citing *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir.

---

[7]    As earlier noted, the "individual capacity" claims against Defendant Ragland are not a subject of *Defendants' Motion for Partial Judgment on the Pleadings*.  (ECF #32, *Memorandum in Support of Motion*, p. 1, n.2, PageID #290).

-14-

2012)) (in turn noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 Fed. App'x 972, 974 (6ᵗʰ Cir. 2011) ("Personal involvement is necessary to establish Section 1983 liability"). Individual liability must therefore "be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the error of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6ᵗʰ Cir. 1991). Supervisory officials and employees cannot be held liable under Section 1983 solely on the basis of *respondeat superior*, or the right to control employees, or on the basis that they failed to remedy a subordinate's unconstitutional conduct. *Colbert,* 2024 U.S. District LEXIS 173672, at *9 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6ᵗʰ Cir. 1999)).

Yet, at this milestone of the litigation, at the motion to dismiss or motion for judgment on the pleadings stage, the Court looks to whether "the well-pleaded material allegations of the pleadings of the opposing party," "taken as true," *state a claim* that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court keeps in mind that Rule 12(b)(6), and thus Rule 12(c) as well (evaluated under the same standards), is not evaluated based on a judge's possible disbelief of a complaint's allegations or doubt that recovery seems likely, but rather whether the minimum standards of pleading under *Iqbal* and *Twombly* are met.

Here, the allegations of the *First Amended Complaint* set forth some level of personal involvement and participation in wrongfully curtailing the otherwise mandatory training requirements applied to Officer Ragland prior to permitting him to conduct his patrol individually, which claims meet the minimum pleading standards to be applied at a motion to

-15-

dismiss stage. (ECF #14, ¶¶ 22-24 [González]; ¶¶ 33-34 [McDowell]; ¶¶ 36-37 [Birdyshaw]; ¶¶ 39-40 [Smiddy]; ¶¶ 43 [Patterson]).

Additionally, the First Amended Complaint also references, in a number of places, a July 8, 2022 memorandum, entitled "Field Training Evaluation of PO Desmond Ragland #57," which purports to show that individually-named Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson (Smiddy and Burdyshaw directly, and the others impliedly by their alleged direct involvement in approving what is described a wrongful early termination after only 15 weeks of Officer Ragland's 24-week Field Training obligations) made an individual and conscious decision to cut short Officer Ragland's required Field Training prior to allowing him to patrol independently. (*See* ECF #14, ¶¶ 6-7, 33, 37, 40, 81).[8]

The individual capacity claims against these individual Defendants later may prove to be insufficient to survive a motion for summary judgment; but, at present they are sufficient to survive a motion to dismiss or for judgment on the pleadings.

---

[8]
    This document was the subject of *Plaintiff's Motion for Leave to Supplement First Amended Complaint* (ECF #35), which sought to have this memorandum attached to the *First Amended Complaint*. While that motion to supplement is denied as moot, given the numerous references to the memorandum in the *First Amended Complaint*, and there being no dispute as to its authenticity, consideration of its substance can be taken into account in deciding a motion to dismiss (and a motion for judgment on the pleadings following the same standards). *See Copelan v. Techtronics Indus. Co., Ltd.*, 95 F. Supp. 3d 1230, 1236-37 (S.D. Ca. 2015) ("Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. . . . However, . . . [d]ocuments specifically identified in the complaint whose authenticity is not questioned by the parties. Such documents may be considered, so long as they are referenced in the complaint, even if they are not physically attached to the pleading. . . . Moreover, the court may consider the full text of those documents even when the complaint quotes only selected portions.") (internal citations omitted).

#### (d) *The Wrongful Death Claims Asserted Against Defendant CMHA, and Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson*

Under Ohio law, political subdivisions, such as CMHA, are generally immune from liability under the Political Subdivision Tort Liability Act for "injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." OHIO REV. CODE § 2744.02(A)(1).

There are five exceptions to this immunity, as set forth in Ohio Revised Code section 2744.02(B), which revokes immunity for damages caused by:

(1) A municipal employee's negligent operation of a motor vehicle when the employee is engaged within the scope of their employment or authority;

(2) The negligent performance of employees with respect to proprietary functions of a political subdivision;

(3) A municipality's negligent failure to keep public roads in repair or negligent failure to remove obstructions from public roads;

(4) A physical defect on the grounds of public buildings used for government functions; and

(5) When civil liability is expressly imposed by another provision of the Ohio Revised Code.

OHIO REV. CODE § 2744.02(B)(1)-(5).

There are no allegations in the *First Amended Complaint* that even remotely fit within the exceptions of this section of the Ohio Revised Code. Plaintiff concedes this. (*See* ECF #36, *Plaintiff's Brief in Opposition to Defendants' Motion for Partial Judgment on the Pleadings*, p. 13, PageID #325) ("Plaintiff concedes that none of the enumerated exceptions to political subdivision immunity set forth in 2744.02(B) apply under the set of facts and circumstances

-17-

alleged."). Plaintiff seeks to establish an Ohio wrongful death claim against CMHA based on Ohio Revised Code section 2744.09(E), which states, "This chapter does not apply to, and shall not be construed to apply to, the following[,] . . . Civil claims based upon alleged violations of the constitution or statutes of the United States . . . ," (ECF #36, p. 13, PageID #325). It is clear that the "wrongful death" claim of the *Second Cause of Action* (as well as the "negligence" claim of the *Fourth Cause of Action*) are state law claims, not claims based on "the constitution or statutes of the United States." Thus, Ohio Revised Code section 2744.09(E) is not applicable to proceed against CMHA on the claim. Defendant CMHA is entitled to judgment on the pleadings with respect to this Ohio law wrongful death claim.

With regard to the individual Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson, "Plaintiff argues that under 2744.03(A)(6)(b) each loses the protection of statutory immunity. With respect to these individually named Defendants, ORC 2744.03 provides that individual political subdivision employees can be liable for (1) acts or omissions manifestly outside the scope of the employee's responsibilities; (2) acts or omissions [done] with malicious purpose, in bad faith or in a wanton and reckless manner and (3) where civil liability is expressly imposed by the Revised Code." (*See* ECF #36, p. 13, PageID #325, directly quoting Plaintiff's brief). With respect to the "wrongful death" claim, there are no allegations of actions "manifestly outside the scope of the employee's responsibilities" or those where "civil liability is expressly imposed by the Revised Code." Nor are there any factually asserted allegations in the *First Amended Complaint* against the individual Defendants other than Officer Ragland that plausibly assert "malicious purpose," bad faith, or wanton and reckless behavior.[9]

---

[9]      The only direct allegation of "malicious purpose, in bad faith, and/or in a wanton or

-18-

Plaintiff has not identified a plausible claim for wrongful death under Ohio law that falls outside the immunity conferred by Ohio Revised Code section 2744.02(A)(1) with respect to Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson.  Accordingly, the wrongful death claims asserted against these individual Defendants are also entitled to judgment on the pleadings with respect to this claim.[10]

### (e)  *The Americans With Disabilities Act Claims Asserted Against All Defendants*

Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  *See, e.g.*, *Colbert v. Cuyahoga County, Ohio*, No. 1:23-CV-01414, 2024 U.S. District LEXIS 173672, at *11-*12 (N.D. Ohio Sept. 25, 2024) (quoting statute).  The ADA "requires the plaintiff to

---

reckless manor" is made in the *Fourth Cause of Action* negligence claim.  It is only by "incorporation" that such might be asserted as part of this *Second Cause of Action* wrongful death claim.  Yet, with respect to both this claim and the general claim in the *Fourth Cause of Action*, there are no plausibly *supported* allegations of malicious purpose, bad faith, or wanton and reckless conduct beyond the mere recitation of the words.  This is not sufficient to support the claim.  *See Willman v. Attorney General of the United States*, 972 F.3d 819, 823 (6th Cir. 2020) (Although a court must accept the well-pleaded allegations of a complaint as true, it "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.") (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)).

[10]   While Plaintiff suggests that the question of whether a political subdivision or employee acted with malice, bad faith, or in a wanton or reckless manner is generally a question of fact, (ECF #36, p. 14, PageID #326), courts in the Sixth Circuit routinely resolve this issue as a matter of law.  *See, e.g.*, *Diver v. Dobson*, No. 3:12-CV-00957, 2014 U.S. Dist. LEXIS 43659, at *20-*21 (N.D. Ohio Mar. 31, 2014); *Surface v. Conklin*, No. 1:15-CV-00040, 2015 U.S. Dist. LEXIS 65865, at *14 (S.D. Ohio May 20, 2015); *Kelly v. Sines*, 647 Fed. App'x 572, 578 (6th Cir. 2016).

-19-

present sufficiently 'significant' evidence of animus towards the disabled that is a but-for cause of the discriminatory behavior." *Colbert*, 2024 U.S. District LEXIS 173672, at *12 (citing *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 681 (6ᵗʰ Cir. 2016)).

The Court begins by noting that neither the Supreme Court of the United States nor the Sixth Circuit has found that Title II of the ADA applies to arrests. *See Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty/ Comm'rs*, 870 F.3d 471, 489 (6ᵗʰ Cir. 2017) (while acknowledging that courts in other circuits have found that the ADA can in fact apply in an arrest context, it notes that neither the Supreme Court nor the Sixth Circuit have done so); *Daniels v. Leslie*, No. 17-10269, 2018 U.S. Dist. LEXIS 109657, at *9-10 (E.D. Mich. July 2, 2018) (same).[11]

Yet, even if the Court were to adopt the position that Title II of the ADA applies to arrests, that provision only provides for the imposition of liability upon public entities, not upon individuals employed by such entities. *See Parker v. City of Highland Park*, 437 F. Supp. 3d 609, 620 (E.D. Mich. 2020) ("In [*City and County of San Francisco, California v. Sheehan*, 575 U.S. 600 (2015)], the Supreme Court said that "[o]nly public entities are subject to Title II [of the ADA].") (case name insert supplied; others in original).  Thus, all of the individually-named Defendants are entitled to judgment on the pleadings with respect to this claim.

As to CMHA, to state a claim under Title II of the ADA against it, Plaintiff must allege "a

---

[11]

Certain district courts within the Sixth Circuit, have acknowledged the possibility of Title II applying to arrests when presented with a case of "wrongful arrest *because* of someone's disability.  See, e.g., *Burton v. City of Memphis*, No. 2:13-CV-02070, 2013 U.S. Dist. LEXIS 146652, at *7 (W.D. Tenn. Oct. 10, 2013) ("Specifically, a wrongful arrest ADA claim is cognizable when police officers have wrongfully arrested someone with a disability because they misperceived the effects of that disability as criminal activity") (quoting *Scozzari v. City of Clare*, 723 F. Supp. 974, 979 (E.D. Mich. 2010) (internal quotation marks omitted)..

-20-

causal relationship between" Maalik Roquemore's disability and CMHA's "alleged discriminatory conduct." *Parker*, 437 F. Supp. 3d at 620 (quoting *Daniels v. Leslie*, 2018 U.S. Dist. LEXIS 109657, at *10).  While a Plaintiff need not allege that Mr. Roquemore was subjected to discrimination *solely* because of his disability, Plaintiff still "must show that the Defendant took action *because* of the plaintiff's disability, *i.e.*, the plaintiff must present [or plead] evidence that *animus* against the protected group was a *significant* factor [in the defendant's conduct]." *Daniels v. Leslie*, 2018 U.S. Dist. LEXIS 109657, at *11 (quoting *Gohl v. Livonia Pub. Sch.*, 134 F. Supp. 3d 1066, 1080 (E.D. Mich. 2015), *aff'd sub nom*, *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016)) (inserts supplied); *see also Smith v. City of Troy, Ohio*, 874 F.3d 938, 947 (6th Cir. 2017) (Title II ADA claim failed where the plaintiff failed to establish that the defendants intentionally discriminated against plaintiff *because* of his disability).

Here, notwithstanding Officer Ragland's later comment to the Emergency Medical Technicians after they had arrived at the scene that Mr. Roquemore "was mental," (*see* ECF #14, ¶¶ 64, 77), Plaintiff has not plead any fact that could establish that Defendant Officer Ragland used force against Mr. Roquemore *because* of his disability or that his disability was a significant factor in his decision to use force.  Nor has Plaintiff plead that any of the other Defendants took any action against Mr. Roquemore because of his disability or that his disability was a significant factor in any decision they may have taken.

Further, while Plaintiff's *First Amended Complaint* suggests that CMHA was aware of Maalik Roquemore's mental health issues generally, (ECF #14, ¶¶ 53-54, 80, 127), there is no allegation indicating that Mr. Roquemore's disability *motivated* any of the Defendants' actions.

-21-

Awareness of a disability without more is insufficient to state a claim under Title II of the ADA. *See Parker*, 437 F. Supp. 3d at 620 ("Parker pleads only that the Defendant officers were *aware* of his condition, not that his condition motivated the officers' conduct towards him.  That is not enough to state a claim under Title II of the ADA") (emphasis in original).

Plaintiff has also not alleged a sustainable Title II "failure to accommodate" claim.  As a preliminary matter, an analysis of reasonable accommodation in the context of a police encounter and arrest must include consideration of the exigent circumstances inherent in an arrest.  *See Roell*, 870 F.3d at 489 (as part of the discussion that neither the Supreme Court not the Sixth Circuit has specifically found that Title II of the ADA applies to arrests).  But more directly, courts in the Sixth Circuit have rejected "failure to train" ADA claims.  *See, e.g., Burton v. City of Memphis*, No. 2:13-CV-02070, 2013 U.S. Dist. LEXIS 146652, at *7 (W.D. Tenn. Oct. 10, 2013) (quoting *Scozzari v. City of Clare*, 723 F. Supp. 974, 981 (E.D. Mich. 2010)) ("A plaintiff may not, however, pursue a 'failure to train' ADA claim arguing that law enforcement officials would have handled the arrest properly if they had been properly trained to 'handle individuals with mental health problems.'").

Thus, Defendants are entitled to judgment on the pleadings with respect to this claim asserted under the ADA.

### (f) *The Ohio Law "Negligence" Claims Asserted Against all Defendants*

Finally, Defendant CMHA is entitled to judgment on the pleadings with respect to the *Fourth Cause of Action* negligence claim for the same statutory immunity reasons applicable with respect to the *Second Cause of Action* wrongful death claim – none of the exceptions to the

general immunity conferred by Ohio Revised Code section 2744.02(A), as set forth in Ohio
Revised Code section 2744.02(B), apply.  *See Bowman v. City of Fairview Park*, No. 1:23-CV-
01406, 2024 U.S. Dist. LEXIS 8126, at *13-*14 (finding that City was entitled to immunity on
plaintiff's negligence claim).

As to the individual Defendants, each are entitled to statutory immunity under Ohio
Revised Code section 2744.03(A)(6), which states that a political subdivision's employees cannot
be held liable for mere negligence.  *Bowman*, 2024 U.S. Dist. LEXIS 8126, at *14 (citing *Fabrey
v.. McDonald Village Police Dept.*, 70 Ohio St. 3d 351, 356, 639 N.E.2d 31, 35 (Ohio 1994)); *see
also Shevlin v. Cheatham*, 211 F. Supp. 2d 963, 973 (S.D. Ohio 2002) ("Pursuant to [Ohio
Revised Code section 2744.03(A)(6)], a police officer cannot be held personally liable for mere
negligence, but only for actions that fall into one of the . . . statutory exceptions to the
immunity.").

Plaintiff appears to seek to avoid the Defendants' entitlement to statutory immunity by
alleging, "[e]ach Defendant acted not only negligently but also with malicious purpose, in bad
faith, and/or in wanton or reckless manner," (ECF #14, ¶ 135), but nowhere in the *First Amended
Complaint* does Plaintiff identify specific facts that plausibly support acts taken with "malicious
purpose," "bad faith," or in "wantonness or recklessness" to take the claim beyond one of plain
negligence.[12]  Ohio's statutory immunity provisions apply to both CMHA and the individual
Defendants with respect to the *Fourth Cause of Action*, and each are entitled to judgment on the
pleadings on this claim.

---

[12]

    *See Fabrey*, 70 Ohio St. 3d at 356, 639 N.E.2d at 35 ("[W]anton misconduct was the
failure to exercise any care whatsoever") (citing *Hawkins v. Ivey*, 50 Ohio St. 2d 114, 363 N.E.2d
367 (1977), *syllabus*).

**B. <u>Plaintiff's Motion for Leave to Supplement First Amended Complaint</u>**

On February 11, 2025, Plaintiff filed a *Motion for Leave to Supplement First Amended Complaint* (ECF #35), "request[ing] that this Court allow her to supplement her First Amended Complaint with the attached Exhibit 1," which is a one-page document titled "Field Training Evaluation of PO Desmond Ragland #57," dated July 8, 2022.  (ECF #35, PageID #311).  This motion was filed approximately two months after the December 6, 2024 agreed cut-off date for amending the pleadings and/or adding additional parties, (*see* ECF #25, PageID #210),[13] and approximately one month after the January 13, 2025 filing of *Defendants' Motion for Partial Judgment on the Pleadings* (ECF #32).  In support of the motion, Plaintiff cites Federal Rule of Civil Procedure 15(d), which provides:

> **Supplemental Pleadings.**  On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  The court may order that the opposing party plead to the supplemental pleading within a specified time.

FED. R. CIV. P. 15(d).

The July 8, 2022 "Field Training Evaluation of PO Desmond Ragland #57," while cited on a number of occasions in *Plaintiff's Brief in Opposition to Defendants' Motion for Partial Judgment on the Pleadings*, (*See, e.g.*, ECF #36, pp. 9-12, PageID #321-#324), was not attached to either the initial *Complaint* (ECF #1) or the *First Amended Complaint* (ECF #14), though it was mentioned in paragraphs 28, 31, and 33 of each of those pleadings.  (*See* ECF #1, ¶¶ 28, 31 &

---

[13]  The December 6, 2024 agreed cut-off date included in the parties' *report of Parties' Planning Meeting Under Fed. R. Civ. P. 26(f) and LR 16.3(b)*, (ECF #25), was acknowledged and accepted by the Court per its November 22, 2024 *Minutes of Proceedings*.  (ECF #28).

33, PageID #8-#9); ECF #14, ¶¶ 28, 31 & 33, PageID #106-#107).

When a party seeks leave to amend a complaint after the date for amendment has passed, two Rules of Civil Procedure come into play, Rules 15 and 16. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave" to amend a pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). Federal Rule of Civil Procedure 16 directs the Court to enter a scheduling order that includes a deadline for amending pleadings and provides that "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(3)(A) & (b)(4). The Sixth Circuit has held that notwithstanding Rule 15's directive to freely give leave to amend, a party seeking to amend after the deadline must first meet Rule 16's good cause standard. *See Leary*, 349 F.3d at 909; *Armatas v. Haws*, 2021 U.S. App. LEXIS 34504, at *7-*8 (6th Cir. Nov. 17, 2021); *Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 Fed. App'x 364, 367 (6th Cir. 2016); *see also Satterwhite v. Ashtabula County Metroparks*, 514 F. Supp. 3d 1014, 1021 (N.D. Ohio 2021) ("When the scheduling order deadline to amend without leave has passed, a plaintiff must first demonstrate good cause under Fed. R. Civ. P. 16(b) for failing to abide by the scheduling order deadline before the court will consider whether amendment is proper under Fed. R. Civ. P. 15(a)."). While a party's diligence in attempting to comply with case management deadlines is the primary factor to consider, possible prejudice to the party opposing modification is another relevant consideration in the good cause analysis. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Leary*, 349 F.3d at 907, 909.

Here, Plaintiff does not formally seek to "amend" the *First Amended Complaint* under Federal Rule of Civil Procedure 15(a)(2), but rather to "supplement" it under Rule 15(d), which

-25-

applies only to "transaction[s], occurrence[s], or event[s] that happened after the date of the

pleading to be supplemented." FED. R. CIV. P. 15(d).  It is beyond question that the transactions,

occurrences, and events related in the July 8, 2022 Field Training Evaluation transpired before the

filing of the initial *Complaint* in August 2024.  Moreover, it is beyond question that Plaintiff had a

copy of this document in her possession prior to filing the initial *Complaint* and the *First

Amended Complaint*, as it is identified in each of those filings, and is a fact acknowledged by

Plaintiff in her *Brief in Opposition to Motion for Partial Judgment on the Pleadings*.  (*See* ECF

#36, p. 9 & n.14, PageID #321).  Thus, Rule 15(d) does not apply to Plaintiff's motion, which

alone would be grounds to deny Plaintiff's motion.

Yet even more pertinent, particularly in light of the Court's partial denial of *Defendants'

Motion for Partial Judgment on the Pleadings* (ECF #32), Plaintiffs *Motion to Supplement* is

effectively moot.  The apparent purpose of Plaintiff seeking to add the July 8, 2022 Field Training

Evaluation as a belated exhibit to the *First Amended Complaint* is to provide support for

Plaintiff's desire to bring a "*Monell*" claim for alleged deprivation of constitutional rights against

Defendant CMHA, a "municipal party," arising out of CMHA's "official customs or policies"

under 42 U.S.C. § 1983, as first described in *Monell v. Department of Social Services*, 436 U.S.

658, 694 (1978).  Yet, CMHA itself (unlike CMHAPD) *has not moved* for dismissal of the

Section 1983 claim plead against it at this stage of the case, but rather anticipates filing for

summary judgment on the claim at a later date, after all discovery has been completed, (*see* ECF

#32, *Defendants' Memorandum in Support of Motion for Partial Judgment on the Pleadings*, p. 2,

PageID #290 n.1), which discovery is expected to include use of the already-known and shared

July 8, 2022 Field Training Evaluation.  Thus, in addition to the request to supplement not fitting

within the ambit of Federal Rule of Civil Procedure 15(d), the request is essentially moot as it relates to the litigation of this case, as that document will be included among those available at the anticipated summary judgment stage of this case.

### C. <u>Defendants' Motion to Stay Discovery</u>

On February 27, 2025, Defendant Jeffery Patterson, on behalf of himself, moved to stay all written discovery issued to him, and on behalf of all Defendants also moved to stay all depositions requested by Plaintiff pending this Court's ruling on *Defendants' Motion for Partial Judgment on the Pleadings*. (ECF #39). The Court granted the motion by margin entry the same day. (ECF #40). This motion is included as "before the Court" here solely for purposes of clarity, completeness, and finality.

On March 4, 2025, Plaintiff filed a *Plaintiff's Brief in Opposition Disputing a Materially Inaccurate Statement in the Government's (CMHA) Motion to Stay*, (ECF #44), regarding a perceived discrepancy between a statement made in *Defendants' Answer to Plaintiff's Amended Complaint* (ECF #16) and a statement made in the *Motion to Stay Discovery* (ECF #39) that one of the individual Defendants named in the *First Amended Complaint* (ECF #14) "was not involved in the incident" at issue in this case. (*Compare* ECF #14, ¶ 41, PageID #108, and ECF #16, ¶ 41, PageID #141, *with* ECF #39, PageID #337). Specifically, Plaintiff contended:

> In the INTRODUCTION to ECF #39 Defendants state that CMHA CEO and Safety Director Jeffery Patterson " . . . was not involved with the incident that occurred on September 5, 2022." This is a material inaccuracy for the following reasons: In Paragraph 41 of Plaintiff's First Amended Complaint (ECF #14), Plaintiff alleged that Jeffery Patterson ("CEO Patterson") is the Chief Executive Officer and Safety Director for CMHA. CEO Patterson is a "person" under 42 USC 1983 and was at all times herein acting under "color of law."

> In Defendants' Answer to Plaintiff's First Amended Complaint (ECF #16)

-27-

Defendant government answered at paragraph 41 that "With regard to the allegations contained in paragraph 41 of Plaintiff's Amended Complaint, Defendants admit that Jeffery Patterson is a person and the Chief Executive Officer and Safety Director for CMHA."

The U.S. Department of Housing and Urban Development official notice, **NOTICE PIH 95-58 (PHA)** (Plaintiff's Brief in Opp. Exhibit 1) has since 1995 suggested *inter alia*, a course of action for Public Housing Directors, in the employment position of Defendant Jeffrey Peterson. The document is entitled *Guidelines for Creating, Implementing and Managing Public Housing Authority Police Departments in Public Housing Authorities*. Section 4[,] Guidance, A-K of that document, directly and specifically defines the responsibilities of Public Housing Agencies and "*Public Housing Directors*"which now, thirty years later, still applies to CMHA, and CEO/Safety Director Jeffery Patterson.

* * * Defendant Patterson is . . . a final policy maker and as the Safety Director of all CMHA safety rules, regulations, policies, and procedures applicable to the actions of [CMHA Police Officers].

Similarly, * * * [t]he substance of [Chapter 1.1 of CMHA's Policy & Procedure Manual, "ORGANIZATION"] . . . is its content on "Police Department Organizational Structure" which specifically denotes via its own organizational chart that the Chief Executive Officer/Safety Director, . . . by virtue of his premier position at the top of the chart, is the ultimate supervisory authority over police department and officer conduct. Further, this organizational chart strongly suggests that CEO/Safety Director Patterson is a final policymaker and supervisory authority with respect to overall operations of the police department and the field training of officers.

* * * While obviously not at the scene of the death of Maalik Roquemore, CEO/Safety Director Jeffery Patterson was one of the governmental individuals intimately, officially, and personally involved in the overall management of CMHA's police department; the development, approval, and enforcement of the entirety of CMHA policies and procedures; the CMHA police department negotiated agreements with the City of Cleveland and the day to day operations of the CMHA governmental police entity.

(ECF #44, pp. 1-4, PageID #361-#364) (first ellipses and emphasis in original; text omissions and inserts provided by Court).[14]

---

[14]

Plaintiff also references Defendant CEO/Safety Director Patterson's signing, on behalf of CMHA, a November 30, 2018 document, titled "FIRST AMENDMENT TO POLICE-

Thus, while Plaintiff's *Brief in Opposition Disputing a Materially Inaccurate Statement in the Government's (CMHA) Motion to Stay* (ECF #44) neither requests nor requires a formal ruling by this Court, the Court notes that, given its rulings on the other motions now before the Court, including the fact that, at least for now, certain of the "individual capacity" claims related to Defendant Patterson (and other individual Defendants) will remain pending anticipated later summary judgment argument and briefing, and Defendant CMHA's and Defendant Ragland's stated intention to move for summary judgment after the completion of discovery, Plaintiff will have an opportunity to develop whatever arguments she may wish to make related to Defendant Patterson's alleged "involvement" in the events of September 5, 2002 as this case continues through discovery.

Thus, for the purposes of clarity, completeness, and finality, the issues raised in connection with *Defendants' Motion to Stay Discovery Pending Ruling on Motion for Partial Judgment on the Pleadings* (ECF #39) are deemed fully addressed and closed.

### III. <u>CONCLUSION</u>

Accordingly, *Defendants' Motion for Partial Judgment on the Pleadings* (ECF #32) is GRANTED in part and DENIED in part, specifically:

As to **ALL** claims asserted against **CMHAPD**, in the *First Cause of Action*, *Second Cause of Action*, *Third Cause of Action*, and *Fourth Cause of Action*, the *Defendants' Motion for Partial*

---

AUTHORIZING AGREEMENT No. 64238 BETWEEN THE CITY OF CLEVELAND AND THE CUYAHOGA METROPOLITAN HOUSING AUTHORITY," as indication of his "involve[ment] with the incident that occurred on September 5, 2022." (ECF #44, p. 3, PageID #363).

*Judgment on the Pleadings* is **GRANTED**.

### *First Cause of Action (Excessive Force/Failure to Train, 42 U.S.C. § 1983):*

As to the **"official capacity"** claims asserted against **Defendants González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson**, the *Defendants' Motion for Partial Judgment on the Pleadings* is **GRANTED**.

As to the **"individual capacity"** claims asserted against **Defendants González, McDowell, Burdyshaw, Smiddy, and Patterson**, the *Defendants' Motion for Partial Judgment on the Pleadings* is **DENIED**.

### *Second Cause of Action (Wrongful Death Under Ohio Law):*

As to the wrongful death claims asserted against **Defendants CMHA, González, McDowell, Burdyshaw, Smiddy, and Patterson**, the *Defendants' Motion for Partial Judgment on the Pleadings* is **GRANTED**.

### *Third Cause of Action (Americans With Disabilities Act, 42 U.S.C. § 12101, et seq.):*

As to the Americans With Disabilities Act claims asserted against **Defendants CMHA, González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson**, the *Defendants' Motion for Partial Judgment on the Pleadings* is **GRANTED**.

### *Fourth Cause of Action (Negligence/Malice Under Ohio Law):*

As to the negligence claims asserted against **Defendants CMHA, González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson**, the *Defendants' Motion for Partial Judgment on the Pleadings* is **GRANTED**.

Accordingly, (1) the *First Cause of Action* excessive force and failure to train claims under 42 U.S.C. § 1983 against Defendant CMHA remain; (2) the *First Cause of Action* "individual capacity" excessive force claims under 42 U.S.C. § 1983 against Defendant Ragland remain; and (3) the *First Cause of Action* failure to train claims under 42 U.S.C. § 1983 against Defendants González, McDowell, Ragland, Burdyshaw, Smiddy, and Patterson remain.  The *Second Cause of Action* wrongful death claim against Defendant Ragland also remains.

*Plaintiff's Motion for Leave to Supplement First Amended Complaint* (ECF #35) is **DENIED** as MOOT.

*Defendants' Motion to Stay Discovery Pending Ruling on Motion for Partial Judgment on the Pleadings* (ECF #39) was earlier GRANTED, per marginal entry order dated February 27, 2025.  (ECF #40).  The arguments raised in *Plaintiff's Brief in Opposition Disputing a Materially Inaccurate Statement in the Government's (CMHA) Motion to Stay* (ECF #44) were noted and were incorporated into the overall consideration of deciding the issues raised in *Defendants' Motion for Partial Judgment on the Pleadings* (ECF #32).

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED:  April 23, 2025

-31-